469 So.2d 817 (1985)
INTERNATIONAL SHIP REPAIR & MARINE SERVICES, INC. and Robert Del Valle, Appellants,
v.
GENERAL PORTLAND, INC., Detsco, Inc., and Detsco Terminals, Inc., Appellees.
No. 84-931.
District Court of Appeal of Florida, Second District.
April 17, 1985.
Rehearing Denied May 20, 1985.
Chris W. Altenbernd of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Anita Brannon of Blain & Cone, P.A., and David A. Townsend, Tampa, for appellants.
Susan W. Fox and Charles W. Pittman of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellees.
FRANK, Judge.
The dispute from which this appeal arises may be generally characterized as having its origin in several complex, interrelated documents associated with the parties' property rights in certain parcels of land located both near and adjacent to the Ybor Channel in Tampa, Florida. The ultimate issue which we resolve by affirming the trial court's final declaratory judgment, entered following a trial, is the nature or priority of the docking rights to be enjoyed by the appellant, International Ship Repair and Marine Services, Inc. ("International Ship") and the appellee, General Portland, Inc. ("General Portland"), at a shared docking facility. International Ship, the plaintiff below, claims that its docking right is on a "first-come, first-served" basis with General Portland. General Portland on the other hand contends that it enjoys a contractually conferred preferential docking right based upon a twenty-four hour notice being given to International Ship.
In support of its claim, International Ship relies upon an easement agreement, to which it is not a party, entered into in 1970 between Detsco Terminals, a prior owner of the property currently owned by one Mr. Del Valle, and General Portland, the lessee of that property. That agreement created a pipeline easement in General Portland which runs with the land it purchased in 1970. The easement entitles General Portland to continue the maintenance of its pipeline over the land now owned by Del Valle but leased to International Ship. *818 General Portland's easement agreement, however, encompasses more than the pipeline upon which it depends to move substances from docked ships to its remote silos. In paragraph six of that agreement it is provided that:
[t]he dock will be available to Portland on a first-come, first-served basis with customary and reasonable conditions and charges to vessels for delay in completion of loading or unloading beyond the normal time allowed therefor. The arrangements in this paragraph six set forth shall extend from the 23rd day of September 1970, to and including the 31st day of January, 2012, and shall be binding upon successive owners, grantees, or lessees of said dock on parcel A and shall constitute covenants running with the land. (emphasis added)
It is the foregoing provision alone upon which International Ship relies in its attempt to define and limit General Portland's present docking right.
General Portland, however, asserts that pursuant to a tri-party agreement, executed between and among Detsco Terminals, General Portland and Gulf Resources in 1970, contemporaneously recorded with General Portland's easement agreement, Gulf Resources and General Portland were placed on a first-come, first-served basis between one another but they were granted a docking priority over Detsco Terminals upon twenty-four hours notice.
International Ship contends before us that the trial court erred in sustaining General Portland's twenty-four hour preferential docking right. That assertion is, of course, grounded upon the Detsco Terminals-General Portland easement agreement. Thus International Ship claims that to reach its final position, the lower court eliminated the first-come, first-served language from the easement agreement and inserted a twenty-four hour preferential right in its place contrary to the principles set forth by this court in City of Dade City v. Simpson, 290 So.2d 530 (Fla. 2d DCA 1974).
General Portland's response urges the view, and we believe correctly so, that International Ship's contention that the tri-party agreement and the easement agreement are separate and distinct is not well-founded; indeed, we, as did the lower court, find the agreements to be functionally intertwined. Each of the agreements appears to have been executed on September 22, 1970. They were recorded the next day. Moreover, statements within the agreements contemplate the achievement of interrelated objectives. Here we follow the doctrine that where two or more documents are executed by the same parties, at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together. See J.M. Montgomery Roofing Company v. Fred Howland, Inc., 98 So.2d 484 (Fla. 1957). Therefore, it is axiomatic that the specific provisions of the tri-party agreement are to take precedence over the general provisions of the easement agreement if a conflict between such provisions is deemed to exist. Suncoast Building of St. Petersburg v. Russell, 105 So.2d 809 (Fla. 2d DCA 1958).
In this case we find no conflict within the agreements relative to the allocation of docking rights. If we assume the existence of such conflict, however, the easement agreement states that "the dock will be available to Portland on a first-come first-served basis." But it does not identify any entity with which General Portland will compete in the docking of ships. Thus, the operative purpose of the general provision found in the easement agreement takes on a full meaning by reference to the specific provisions of the tri-party agreement. Although the tri-party agreement, consistent with the easement agreement, also uses the phrase "first-come first-served" as between General Portland and Gulf Resources, it grants a twenty-four hour priority to General Portland over all others, including International Ship, seeking to use the dock.
In further challenging the lower court's conclusion, International Ship takes the position *819 that even if the documents are read in pari materia, separate meanings can be given to the provisions of both agreements. It is in this setting that International Ship attempts to demonstrate that the agreements are separate, distinct, and irreconcilable. It predicates those notions upon the fact that the tri-party agreement was dated July 8, 1970, but the easement agreement was not dated until September 14, 1970. In resolving this aspect of the matter, we note that neither General Portland nor International Ship disputes that both agreements were signed by General Portland on September 22, 1970, and that both agreements were recorded on September 23, 1970. International Ship constructs its theory of unrelated, independent documents upon the ground that the tri-party agreement confer ring a twenty-four hour preference upon General Portland, referred to by International Ship as the "earlier" agreement, is superseded by the "later" easement agreement which speaks of the "first-come, first served" concept. The "earlier" document confers the twenty-four hour preferential right beginning on July 8, 1970. The "later" document, according to International Ship, ended that right on September 23, 1970, and replaced it with a first-come, first-served right. From these facts, Inter national Ship claims that if the two documents are read as a single document, which we do, creating both a first-come, first-served right and a twenty-four hour preferential right for the same periods, a patent ambiguity or conflict exists which cannot be resolved on the basis of parol evidence. See Crown Management Corp. v. Goodman, 452 So.2d 49 (Fla. 2d DCA 1984). In contrast to International Ship's assessment of the documents, we find no lack of clarity within their terms and we also find that the lower court neither relied upon parol evidence nor did it rewrite the easement agreement.
It is manifest that the lower court correctly perceived the correlative significance of the two agreements. International Ship cannot lay claim to any greater docking right than was passed to it under its lease with Del Valle who, in turn, received only a first-come, first-served right from Detsco Terminals. Detsco Terminals, of course, in competing with General Portland for a docking right was limited by the tri-party agreement to the first-come, first-served principle. General Portland's easement agreement cannot in any way be viewed as diminishing General Portland's preferential docking right in a docking contest with Detsco Terminals or Del Valle and, hence, International Ship. The first-come, first-served limitation in General Portland's easement agreement is operative against the world, but not against International Ship.
International Ship's final argument focuses upon whether it can be charged with knowledge of an unrecorded settlement agreement entered into on July 29, 1970, between Detsco Terminals and General Portland which terminated a lawsuit between those parties. The settlement agreement transferred the silo property from Detsco Terminals to General Portland and integrated into its terms the existing but then unsigned tri-party and easement agreements. The settlement agreement states that:
Portland shall not be required to consummate any portion of the transaction unless all of the agreements specified hereinabove and all other conditions hereinabove set forth shall be performed as of the closing date.
In spite of the trial court's reference to the settlement agreement in its final judgment, it did not, contrary to International Ship's view, rely upon that agreement in reaching its determination of the parties' respective docking rights. It merely found that International Ship had acquired actual notice of General Portland's claim to the preferential docking right prior to International Ship's leasehold interest in the subject property. Moreover, the settlement agreement is silent with respect to the preferential docking right. The referential inclusion of the easement and tri-party agreements in the settlement agreement serves only to confirm the soundness of the trial court's determination that the recorded *820 documents are inseparable and fixed a twenty-four hour preferential docking right in General Portland.
In view of the foregoing, and after a careful analysis of the trial transcript, exhibits, and the other documents in the record on appeal, we conclude that the trial court was correct in determining the twenty-four hour preferential docking right in favor of General Portland.
Affirmed.
DANAHY, A.C.J., and LEHAN, J., concur.