**ELECTRO SERVICES, INC.,**
Plaintiff-Appellee,

v.

**EXIDE CORPORATION,**
Defendant-Appellant.

No. 87-3565.

United States Court of Appeals,
Eleventh Circuit.

June 28, 1988.

Griffin B. Bell, King & Spalding, James D. Miller, Perry E. Pearce, Atlanta, Ga., for defendant-appellant.

A. Lamar Matthews, Jr., Williams, Parker, Harrison, Dietz & Getzen, Theodore C. Eastmoore, Sarasota, Fla., for plaintiff-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.

JOHNSON, Circuit Judge:

In this diversity case, Electro Services, Inc. (Electro) sued Exide Corporation (Exide) for compensatory and punitive damages allegedly attributable to Exide's defective automotive batteries and Exide's conduct in relation to the batteries' manufacture and sale and this litigation. A jury found for Electro on all seven counts: (1) negligence, (2) breach of warranty, (3) fraud and misrepresentation, (4) scheme to defraud, (5) false advertising, (6) deceptive trade practices/theft, and (7) breach of contract. The jury awarded Electro $750,000 in compensatory damages and $3.5 million in punitive damages.

On May 20, 1987, the United States District Court for the Middle District of Florida entered judgment on the jury's verdict. On June 4, 1987, Exide filed motions for a stay pending disposition of motions for new trial and judgment notwithstanding the verdict (Fed.R.Civ.P. 62(b)), for a new trial or remittitur (Fed.R.Civ.P. 59(a), (e)), and for a judgment notwithstanding the verdict (Fed.R.Civ.P. 50(b)). On July 9, 1987, the

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

district court denied the motions for new trial or remittitur and for judgment notwithstanding the verdict.

On July 29, 1987, Exide filed its notice of appeal.[1] Exide does not question its liability. Rather, Exide attacks the compensatory and punitive damages awards on four grounds: (1) the district court abused its discretion by permitting one of Electro's witnesses to testify as to the amount of compensatory damages, (2) insufficient evidence supported the jury's award for lost profits, (3) the district court improperly instructed the jury as to punitive damages, and (4) the $3.5 million award for punitive damages violated the Excessive Fines Clause of the Eighth Amendment. We affirm.

### I. *Testimony Regarding Compensatory Damages*

The jury awarded Electro $750,000 in compensatory damages.[2] Over objection, the district court permitted Floyd Price, secretary-treasurer and one-third owner of Electro, to testify that Electro suffered losses of $750,000. Exide argues that the district court abused its discretion in permitting this testimony. *See Murphy v. City of Flagler Beach,* 761 F.2d 622, 626 (11th Cir.1985) ("A trial judge's rulings concerning the admissibility of evidence are reversible only where the appellant can show that the judge abused his broad discretion and that the decision affected the substantial rights of the complaining party."). We disagree.

■ Florida law guides our analysis:

We recognize the general rule that an owner of property is qualified as such to testify to the value of his property, whereas officers of corporations do not qualify on the same basis. However, if the officer is qualified by virtue of his experience, his management of the affairs of the corporation and his knowledge of relevant value he is also a competent witness as to value.

*Mercury Marine Division v. Boat Town U.S.A., Inc.,* 444 So.2d 88, 90 (Fla.Dist.Ct. App.1984). Exide contends that Price is not a competent witness because he was a full-time attorney and did not participate in the day-to-day operation of Electro. In its brief, however, Electro provides citations to the record to demonstrate that Price's experience, management, and knowledge make him a competent witness. *See* Brief of Appellee at 3–5, 17. Our independent review of the record convinces us that Price was a competent witness and that the district court did not abuse its discretion in permitting Price to testify as to the amount of compensatory damages.

Exide misplaces its reliance on the testimony of Electro's expert witness, Price's prior deposition testimony, and Price's signing of interrogatories. Exide's contentions are directed at the weight, rather than the admissibility, of Price's testimony. *See J & H Auto Trim Co. v. Bellefonte Insurance Co.,* 677 F.2d 1365, 1369 (11th Cir.1982) ("[A]n owner of property is competent to testify regarding its value. 'The weight of such testimony is, of course, affected by the owner's knowledge of cir-

---

**1.** At oral argument, this Court *sua sponte* raised a question as to the timeliness of Exide's appeal concerning the entry of final judgment on May 20. We conclude that the appeal is timely. Rule 4(a)(1) of the Federal Rules of Appellate Procedure provides that a notice of appeal must be filed within 30 days after the entry of judgment. It thus appears that Exide's notice of appeal on July 29 was not filed within 30 days of the district court's entry of judgment on May 20. It is well settled, however, that a timely filed motion for new trial suspends the time to appeal and review must be initiated within 30 days after denial of the motion. *See, e.g., Morse v. United States,* 270 U.S. 151, 153–54, 46 S.Ct. 241, 242, 70 L.Ed. 518 (1926). Because Exide filed its notice of appeal on July 29, a time

within 30 days of the district court's denial on July 9 of the motion for new trial, the remaining question is whether Exide filed its motions within 10 days of the May 20 entry of judgment. Pursuant to Federal Rule of Civil Procedure 6(a), we calculate that the motions were filed on the tenth day (June 4) and thus were timely.

We note that, in its May 20 entry of judgment, the district court reserved judgment on the issues of costs and attorney fees. We have jurisdiction over this appeal. *See Budinich v. Becton Dickinson & Co.,* —— U.S. ——, ——, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988).

**2.** Exide's challenge regarding lost profits is discussed *infra* in Section II.

cumstances which affect value, and as an interested witness, it is for the jury to evaluate the credibility of his testimony.'" (quoting *Berkshire Mutual Insurance Co. v. Moffett,* 378 F.2d 1007, 1011 (5th Cir. 1967) (footnote omitted))). Apparently, the jury found Price's testimony credible.

## II. *Award for Lost Profits*

The jury awarded Electro $145,509 for loss of future profits as part of the $750,-000 award of compensatory damages. *See* R22:10. Exide argues that the evidence is insufficient to support any award for lost profits and, if the evidence supports some award, the jury erred in determining the amount it awarded. We disagree.

At trial, the jury heard the testimony of Lanny Tyler, a certified public accountant and an expert witness for Electro, regarding Electro's loss of future profits. Tyler examined 17 commercial accounts and determined when these commercial purchasers bought batteries from Electro and when they stopped buying batteries from Electro. Tyler then determined the average number of batteries purchased per month and, using Electro's financial statements, determined the gross profit percentage on automotive batteries. Tyler then projected the monthly gross profit figure for 60 months and arrived at a figure of $113,039 for lost gross profits. Tyler then used a net profit margin to calculate lost net profits of $100,000 for the 17 commercial accounts.

Tyler stressed in his testimony that he calculated lost profits for commercial accounts only. Tyler stated that his calculation did not include lost profits on individual accounts because, with the thousands of returns, it would be very difficult and very prohibitive timewise to contact all the individuals and calculate a figure. Floyd Price, secretary-treasurer and one-third owner of Electro, testified that "people were madder than you can imagine, and they quit buying from us.... We lost a lot of customers." R7:89. Similarly, Lawrence Anderson, another one-third owner of Electro, testified that many people were bringing batteries back. *See* R13:187.

■ We conclude that the evidence supports the jury's award for lost profits. In the landmark case of *Twyman v. Roell,* 123 Fla. 2, 166 So. 215, 218 (1936), the Florida Supreme Court stated that "[t]he uncertainty which defeats recovery in [lost profit] cases has reference to the cause of the damage rather than the amount of it." *Twyman* indicates that "uncertainty as to the amount of damages or difficulty in proving the damages will not prevent recovery if it is clear that substantial damages were suffered as a result of the wrong. Inability to give the exact or precise amount of damages does not preclude recovery...." *Conner v. Atlas Aircraft Corp.,* 310 So.2d 352, 354 (Fla.Dist.Ct.App.) (footnote omitted), *cert. denied,* 322 So.2d 913 (Fla.1975); *accord R.A. Jones & Sons v. Holman,* 470 So.2d 60, 70 (Fla.Dist.Ct. App.1985), *petition for review dismissed,* 482 So.2d 348 (Fla.1986); *A.O. Smith Harvestore Products, Inc. v. Suber Cattle Co.,* 416 So.2d 1176, 1178 (Fla.Dist.Ct.App. 1982); *Adams v. Dreyfus Interstate Development Corp.,* 352 So.2d 76, 78 (Fla.Dist. Ct.App.1977); *National Papaya Co. v. Domain Industries,* 592 F.2d 813, 818 (5th Cir.1979) (applying Florida law).

Consequently, "[i]f from proximate estimates of witnesses a satisfactory conclusion can be reached, it is sufficient if there is such certainty as satisfies the mind of a prudent and impartial person." *Twyman,* 166 So. at 218. "The requisite to ... allowance [for lost profits] is some standard, such as regular market values, or other established data, by reference to which the amount may be satisfactorily ascertained." *Id.,* 166 So. at 217. Generally, "[p]roof of the income and of the expenses of the business for a reasonable time anterior to the interruption charged, or facts of equivalent import, is usually required." *New Amsterdam Casualty Co. v. Utility Battery Manufacturing Co.,* 122 Fla. 718, 166 So. 856, 860 (1936); *see National Industries v. Sharon Steel Corp.,* 781 F.2d 1545, 1547 (11th Cir.1986).

■ In the present case, it is undisputed that Exide caused Electro to lose profits as a result of "lousy" batteries. Causation of

damages thus is not an issue; rather, the amount of damages is the issue. As set forth above, Florida law clearly provides that inability to give the precise amount of damages does not preclude recovery when substantial damages were suffered. Tyler's testimony, based upon Electro's financial records, customer accounts, net profit margin, and sales projections, satisfies the dictates of Florida law and supports the award as it relates to commercial purchasers. *See Born v. Goldstein*, 450 So.2d 262, 264 (Fla.Dist.Ct.App.), *petition for review dismissed*, 458 So.2d 272 (Fla.1984); *Massey–Ferguson, Inc. v. Santa Rosa Tractor Co.*, 415 So.2d 865, 867 (Fla.Dist.Ct.App. 1982). Similarly, Tyler's testimony regarding Electro's sales figures and determination of a net profit margin, the testimony by Price and Anderson concerning lost customers, and the number of batteries returned provided adequate evidence to satisfy the "reasonable certainty" requirement for lost profits as determined by the jury for individual accounts. Accordingly, we will not disturb the jury's award for lost profits.

### III. *Punitive Damages Instruction*

The district court charged the jury on punitive damages as follows:

> If you find for Electro Services and find also that Exide Corporation acted with malice, moral turpitude, wantonness, willfulness, or reckless indifference to the rights of others *or* if you find that Exide Corporation violated Section 817.41 Florida Statutes by disseminating to Electro Services and the general public misleading advertisements you may in your discretion assess punitive damages against Exide Corporation as punishment and as a deterrent to others.

R21:184 (emphasis added). Exide claims that this charge is erroneous because it states that the jury could award punitive damages against Exide for violation of Section 817.41 without making a finding of "malice, moral turpitude, wantonness, willfulness, or reckless indifference to the rights of others." Electro argues that we should decline to consider this alleged error because Exide failed to object to the challenged instruction.

This Court's reasoning in *Pate v. Seaboard Railroad*, 819 F.2d 1074, 1082–83 (11th Cir.1987), guides our analysis. Rule 51 of the Federal Rules of Civil Procedure provides in relevant part that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Exide admits that it made no formal objection to the challenged instruction at trial, but argues that this failure to object is excused based upon its offer of proposed charges related to punitive damages made during a conference concerning requested jury charges. *See Industrial Development Board v. Fuqua Industries*, 523 F.2d 1226, 1238 (5th Cir.1975) ("Only when the appellate court is sure that the trial court was adequately informed as to a litigant's contentions may the appellate court reverse on the basis of jury instructions to which there was no formal objection.").

We conclude that Exide's conduct at the charge conference failed to satisfy the dictates of Rule 51 for two independent reasons. First, the now-challenged charge was expressly discussed at the charge conference and Exide's attorney indicated agreement with, rather than objection to, it.[3] Second, Exide's mere offer of proposed

---

3. The following colloquy took place at the charge conference:

The Court: The only thing I was not sure about, and you say this is straight from the Florida Standard Jury Instruction, is the misleading advertisement part in that.

[Plaintiff's Counsel]: That part is not, Judge. That comes directly from the statute.

The Court: Okay. So you didn't—

[Plaintiff's Counsel]: The part that is not in the—

The Court: Okay. Well, are you sure about that? Have you got a case supporting that?

[Plaintiff's Counsel]: There are no cases interpreting that, Judge. But the statute, itself, states that the jury is allowed to consider punitive damages if a violation of the statute is found.

The Court: [Asks for comments of defendant's counsel]

charges related to punitive damages does not serve adequately to inform the trial judge of Exide's contentions. In *Ezell v. Mobile Housing Board*, 709 F.2d 1376, 1382 (11th Cir.1983), this Court refused to examine a proposed charge when no objection was made to the district court's refusal to give the proposed charge. If offering a charge does not preserve an objection for refusal to give that charge, then offering a proposed charge, a fortiori, does not preserve an objection to the giving of a different charge. Consequently, we approve and adopt the following language: "[T]he offering of a proposed instruction does not preserve a challenge to the court's instructions under Rule 51, absent a specific objection." *See Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509, 1515 (10th Cir.1984), *aff'd on other grounds*, 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985).

Because Exide failed adequately to object to the challenged charge, we review the charge for "plain error." "In order to merit reversal as plain error, [Exide] must establish that the challenged instruction was an incorrect statement of the law and that it was probably responsible for an incorrect verdict, leading to substantial injustice." *Pate, supra*, 819 F.2d at 1083.

We conclude that Exide has failed to establish either ground.

■ First, the challenged instruction was a correct statement of law. Section 817.41(6) provides that "[a]ny person prevailing in a civil action for violation of this section [prohibiting misleading advertisement] ... may be awarded punitive damages in addition to actual damages proven. This provision is in addition to any other remedies prescribed by law." We think it evident that proof of a violation of the statute itself supports an award of punitive damages. Consequently, we will not disturb this clear policy determination of the Florida legislature.

■ Second, even if the instruction was an incorrect statement of law, we do not believe that it was responsible for an incorrect verdict, resulting in substantial injustice. The jury found that Exide was liable for negligence, breach of warranty, fraud and misrepresentation, a scheme to defraud, false advertising, deceptive trade practices/theft, and breach of contract. It is clear from these unchallenged findings and the facts underlying them[4] that the jury would have awarded punitive damages even if part of the charge was erroneous.

---

[Defendant's Counsel]: I am not sure which misleading advertising statute? There are two of them.
[Plaintiff's Counsel]: In 817.41.
The Court: He only refers to 817.41. That is another reason for dividing—is that the one we are dividing up into two?
[Plaintiff's Counsel]: Yes, sir.
The Court: That is another good reason for dividing it up.
[Plaintiff's Counsel]: Subsection 6 of that advertising statute says: "Any person prevailing in a civil action for violation of this section shall be awarded costs[,] including reasonable attorney's fees[,] and maybe [sic] awarded punitive damages in addition to actual damages proven."
The Court: It seems pretty clear, doesn't it?
[Plaintiff's Counsel]: And it continues with: "This provision is in addition to any other remedies prescribed by law."
[Defendant's Counsel]: *The statute says that, Your Honor.* I have found it.
The Court: All right. We'll give Number 23, then. That seems to cover it.
R15:108–09 (emphasis added).

**4.** Although not necessarily an exhaustive list of facts relevant to this issue, we note that: (1)

Exide represented to Electro a warranty return percentage it knew to be too low, (2) Exide told Electro that Electro was the only Exide customer in the nation having excessive returns, yet Exide also gave this answer to other complaining Exide customers, (3) Exide's engineers testified that batteries Exide represented had a certain "life" could not be manufactured to last for any specific warranty time period, (4) a former Exide Vice President admitted that Exide had manufactured and shipped "lousy" batteries to Electro, (5) one of Exide's plant managers said that defective batteries were being shipped to Florida so that tourists would buy them, return home, and be unable to return the batteries to the place of purchase for warranty adjustment, and (6) Exide asked Electro not to sue while Exide considered settlement, and then Exide sued Electro in federal court in Philadelphia, *see Exide Corp. v. Electro Services, Inc.*, 596 F.Supp. 1404, 1406 (E.D.Pa.1984), cancelled all pending Electro orders for golf car batteries, wrote Electro's suppliers to say Electro did not pay its bills, and devised a plan to steal Electro's customers.

**1530**

## IV. *Punitive Damages as an Excessive Fine*

■ Exide claims that the $3.5 million punitive damages award violates the Excessive Fines Clause of the Eighth Amendment. We hold that *Baker v. Dillon*, 389 F.2d 57 (5th Cir.1968), controls this issue and thus the issue is not open for appellate review.

In *Baker*, this Circuit's predecessor reasoned:

> It is a well-established rule of this Court that the granting or denial of a new trial on the ground of excessive or inadequate damages is a matter of discretion with the trial court, not subject to review except for grave abuse of discretion. The necessary implication of this rule is that there can be no appellate review if the trial court was not given an opportunity to exercise its discretion on a motion for a new trial. Since there was no motion for new trial in this case, we have no basis for reviewing the trial court's exercise of discretion and therefore no basis for reviewing the adequacy of damages.

*Id.* at 58 (citations omitted). *Baker*'s reasoning applies with equal force to the situation where, as here, a party makes a motion for new trial, but does not raise the ground now asserted on appeal. *See* R6:162, at 2–3; R6:168, at 4.[5]

■ Furthermore, if the issue were properly preserved for appellate review, we con-

clude that Exide is not entitled to prevail on the merits of its argument. *Ingraham v. Wright*, 525 F.2d 909 (5th Cir.1976) (en banc), *aff'd*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) and *Jowers v. Nationwide Insurance Co.*, 832 F.2d 1246 (11th Cir.1988), control our analysis.

Although *Ingraham* addressed the Cruel and Unusual Punishment Clause of the Eighth Amendment, its language applies with equal force here: "Not only the connotation of the words 'bail,' and 'fine,' but the legislative history concerning enactment of the bill of rights supports an argument that the Eighth Amendment was intended to be applied only to punishment invoked as a sanction for criminal conduct." 525 F.2d at 912–13 (footnote omitted). In *Jowers*, this Court rejected an argument identical to that raised by Exide: "Nationwide also asserts that the size of the [punitive damages] award violates the excessive fines clause of the eighth amendment to the United States Constitution. We find this argument particularly unpersuasive." 832 F.2d at 1252 n. 8 (citation omitted).[6] Consequently, we hold that the Excessive Fines Clause does not apply in the civil context.[7]

■ Finally, if the Excessive Fines Clause were to apply to civil cases, we conclude that the $3.5 million punitive damages award is not excessive. Although Exide does not suggest any analysis for determining whether the award is exces-

---

**5.** We find unavailing any suggestion that we should excuse the failure to raise this ground before the district court. On March 9, 1987, the Supreme Court noted probable jurisdiction in a case presenting the question of whether the Excessive Fines Clause applies in the civil context to a punitive damages award. *See Bankers Life & Casualty Co. v. Crenshaw*, — U.S. —, 107 S.Ct. 1367, 94 L.Ed.2d 683 (1987). (Because the issue was not presented to Mississippi courts, the Supreme Court declined to address the merits. *Bankers Life & Casualty Co. v. Crenshaw*, — U.S. —, 108 S.Ct. 1645, 1649–1651, 100 L.Ed.2d 62 (1988)).

Exide relied on the Supreme Court's note of probable jurisdiction to argue this issue on appeal. The grant of certiorari, however, easily predated the filing of Exide's new trial motions on May 6, 1987, and June 4, 1987. Yet, Exide failed to present this issue to the district court. In addition, the Supreme Court had heard oral

argument on this issue in an earlier case, but its resolution of the case precluded it from reaching the merits of this "important" issue. *See Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813, 828–29, 106 S.Ct. 1580, 1589, 89 L.Ed.2d 823 (1986).

**6.** The comment in *Jowers* may appear ambiguous when read out of context. Because this Court concluded that the great weight of the evidence did not support the punitive damages award, *see* 832 F.2d at 1255, it is clear that this Court, rather than concluding that the award was not an "excessive" fine, determined that the Excessive Fines Clause does not apply in the civil context.

**7.** We note that, although the issue was presented in two cases, the Supreme Court has yet to address the issue. *See* cases cited *supra* note 5.

sive under the Eighth Amendment, we believe an appropriate test would be whether the award is so large as to shock the judicial conscience. Based on the facts relating to punitive damages, *see supra* note 4, we cannot say that the $3.5 million award is out of all reasonable proportion to the egregiousness of Exide's conduct so as to shock the judicial conscience.

Accordingly, AFFIRMED.

## ORDER

BY THE COURT:

On December 28, 1987, Electro filed a motion for costs and attorney fees on appeal. On January 5, 1988, Exide filed its response. On January 26, 1988, this Court carried Electro's motion with the case. In light of our affirmance today, we determine that, to the extent permitted by Florida law, Electro is entitled to an award for costs and attorney fees for this appeal. We direct that the district court determine the amount of this award when it considers the issues of costs and attorney fees, issues upon which the district court reserved judgment when it entered final judgment on May 20, 1987.