Charles W. CLAYTON, Jr., W. Malcolm Clayton, Orlando Executive Park, Inc., a Florida corporation, Plaintiffs–Counterdefendants, Appellees–Cross–Appellants,

v.

HOWARD JOHNSON FRANCHISE SYSTEMS, INC., Howard Johnson Company, Inc., Defendants–Counterclaimants, Appellees,

Marriott Corporation, Marriott Family Restaurants, Inc., Defendants–Counterclaimants, Appellants–Cross–Appellees.

No. 90–3309.

United States Court of Appeals, Eleventh Circuit.

Feb. 24, 1992.

Mary A. Lau, Lau, Lane, Pieper & Asti, P.A., Tampa, Fla., for. Marriott.

Leon H. Handley, Gurney & Handley, Robert A. White, William L. Eagan, (Arnold, Matheny & Eagan, P.A., Orlando, Fla., for Clayton, et al.

Frank R. Jakes, Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A., Tampa, Fla., for Howard Johnson.

Before ANDERSON, Circuit Judge, CLARK *, Senior Circuit Judge, and BROWN **, Senior District Judge.

ANDERSON, Circuit Judge.

This case involves two documents executed on the same day in 1965, one of which we will refer to as the Motel License and the other as the Restaurant Lease. There have been several participants in the transactions relating to this case. For purposes relevant to this appeal, we summarize the participants as follows. The plaintiffs below are Charles W. Clayton, Jr., W. Malcolm Clayton, and their wholly-owned corporation, Orlando Executive Park, Inc. These parties will be referred to in this opinion as the Claytons. The Claytons were the licensee of the Motel License and the lessor of the Restaurant Lease. The licensor of the Motel License and the lessee of the Restaurant Lease were two affiliated companies which by corporate re-

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Wesley E. Brown, Senior U.S. District Judge for the District of Kansas, sitting by designation.

structuring had by 1971 become the Howard Johnson Company. We will refer to the Howard Johnson Company and its affiliated companies as Old Howard Johnson. Old Howard Johnson is to be distinguished from the defendant-appellee of similar name which we will call in this opinion New Howard Johnson. Prior to 1985 Old Howard Johnson was the licensor of the Motel License and the lessee of the Restaurant Lease. In 1985 defendant Marriott purchased all of the stock of Old Howard Johnson. Marriott retained the Restaurant Lease, but immediately assigned its interest in the Motel License to New Howard Johnson. Thus, the interest of Old Howard Johnson in the Motel License and the Restaurant Lease became divided for the first time in 1985.

The central issue in this appeal is whether the Motel License and the Restaurant Lease are two separate and independent contracts, or whether they are parts of a single, overall franchise agreement. The district court found that they were two separate contracts. We disagree.

## I. FACTS

The following facts are relevant to the issues on appeal. On January 29, 1965, the Claytons and Old Howard Johnson entered into the Motel License. The Claytons agreed to construct on their own land a motel to the specifications of Old Howard Johnson. The Claytons were granted the right to use the Howard Johnson name, and agreed to pay royalties to Old Howard Johnson. On the same date, January 29, 1965, the Claytons and Old Howard Johnson entered into the Restaurant Lease. The Claytons agreed to construct on the same land a restaurant to the specifications of Old Howard Johnson, and to lease same to Old Howard Johnson. Old Howard Johnson would operate it as a Howard Johnson's Restaurant and pay rent to the Claytons. Through the two documents, the Claytons became the owner/operator/licensee of a "Howard Johnson's Motor Lodge" and the owner/lessor of a "Howard Johnson's Restaurant." In each document Old Howard Johnson was the other party. The motel and restaurant were contiguous.

Relations deteriorated and, in December 1985, soon after Marriott acquired Old Howard Johnson, the Claytons stopped paying royalties under the Motel License. In May 1986, the Claytons formally repudiated their obligations under the Motel License. Throughout this time, the Claytons continued to receive rent under the Restaurant Lease. In December 1986, Marriott informed the Claytons that it was considering boarding up the restaurant, and, in 1987, Marriott discontinued all restaurant services to the motel. The Claytons made a formal demand that Marriott resume the services, but Marriott failed to do so. Five days later, the Claytons filed the instant suit. New Howard Johnson filed a counterclaim against the Claytons.

## II. PROCEDURAL POSTURE

The proceedings in the district court which are relevant to the issues on appeal are as follows. The Claytons' primary claim below was that the Motel License and the Restaurant Lease were part of a single, overall franchise agreement, that the agreement imposed a duty upon Old Howard Johnson and its successors in interest (thus Marriott and New Howard Johnson) to provide bar services, banquet services, and room service to the motel, and that there had been a failure to discharge that duty. Thus, the Claytons claimed that both Marriott and New Howard Johnson were liable for breach of the contract. In its counterclaim, New Howard Johnson sought recovery from the Claytons for nonpayment of royalties. The Claytons defended that the failure to discharge the above-mentioned duty to provide food services constituted justification for their decision to stop paying royalties.

The district court held that the Motel License and the Restaurant Lease were separate and independent contracts, that each was unambiguous, and that neither imposed a duty to provide food services. Thus, the district court excluded any relevant parol evidence and, in effect, dismissed the Claytons' claim.

The Claytons filed an amended complaint setting out an alternative theory of recovery—i.e., even if the documents did not originally create such a duty, they were modified by the conduct of the parties, and, as modified, such a duty was created and breached. We will refer to this alternative theory as the modification claim.

The only claim of the Claytons which the district court permitted to go to trial was their modification claim. New Howard Johnson's counterclaim also went to trial.

With respect to the Claytons' modification claim against New Howard Johnson, the district court directed a verdict in favor of New Howard Johnson at the close of the Claytons' case. With respect to the Claytons' modification claim against Marriott, the jury returned a verdict in favor of the Claytons and against Marriott in the amount of $421,412.45. With respect to New Howard Johnson's counterclaim against the Claytons for failure to pay royalties, the jury returned a verdict against the Claytons and in favor of New Howard Johnson in the amount of $1,200,089.

Initially, Marriott appealed the judgment against it. The Claytons then appealed both the judgment denying their claim against New Howard Johnson and the judgment in favor of New Howard Johnson on New Howard Johnson's counterclaim.[1]

We discuss first the Claytons' contract claim against both Marriott and New Howard Johnson and New Howard Johnson's counterclaim, and then we discuss Marriott's appeal.

### III. DISCUSSION

A. *The Claytons' Contract Claims and New Howard Johnson's Counterclaim*

The central issue in this appeal is whether the Motel License and the Restaurant Lease were properly regarded as two separate and independent contracts, or whether the two documents should have been construed as part of a single franchise agree-

ment. The district court held they were separate and independent, adopting the position urged by Marriott and New Howard Johnson both in the court below and on appeal.

■ Under Florida law, where two or more documents are executed by the same parties, at or near the same time and concerning the same transaction or subject matter, the documents are generally construed together as a single contract. For example, in *International Ship Repair & Marine Services, Inc. v. General Portland, Inc.,* 469 So.2d 817 (Fla.App.1985), the Florida District Court of Appeals held that an easement agreement (which created a first come, first serve right of access to a ship loading dock), and a tri-party contract (regarding access to the dock) should be read together to discern the appropriate docking priority among the parties. In that case, the Florida court rejected much the same argument now presented by Marriott and New Howard Johnson:

> General Portland's response urges the view, and we believe correctly so, that International Ship's contention that the tri-party agreement and the easement agreement are separate and distinct is not well-founded; indeed, we, as did the lower court, find the agreements to be functionally intertwined. Each of the agreements appears to have been executed on September 22, 1970. They were recorded the next day. Moreover, statements within the agreements contemplate the achievement of interrelated objectives. Here we follow the doctrine that where two or more documents are executed by the same parties, at or near the same time, in the course of the same transaction, and concern the same subject matter, they will be read and construed together.

*Id.* at 818. To the same effect, *see J.M. Montgomery Roofing Co. v. Fred Howland, Inc.,* 98 So.2d 484 (Fla.1957); *Holcomb v. Bardill,* 214 So.2d 522 (Fla.App.

---

1. Other rulings in the district court are not relevant to the issues on appeal. *See infra,* note 7.

1968), *cert. denied,* 225 So.2d 526 (Fla. 1969).

In the instant case, we readily conclude that the two documents should be construed together as a single franchise agreement. The Motel License and the Restaurant Lease were executed on the same date between the same parties, and dealt with the operation of related businesses situated contiguously upon the same land. In addition, the two documents contain numerous cross-references and other evidence that they are functionally intertwined, indicating that the parties contemplated that the two documents would be considered together. Indeed, each document contains an express provision that it was entered into in contemplation of the other document.[2] Each document provides that Old Howard Johnson would have an option to cancel if the construction provided for in the other document was not done. Of particular significance for this case, paragraph 8 of the Motel License prohibits the Claytons from providing food services on the motel premises without the written consent of Old Howard Johnson and prohibits the use of the motel premises for the sale of food except through the adjacent Howard Johnson's restaurant which was the subject of the contemporaneously executed Restaurant Lease.[3] This provision raises an inference that the parties contemplated that food service would be provided to the motel by the restaurant. This inference is supported by the fact that the Howard Johnson's Motor Lodge's Handbook (referred to and incorporated by paragraph 2 of the Motel License) indicated that the "major key" of the Howard Johnson's Motor Lodge franchise system was that each motor lodge had an adjacent Howard Johnson's Restaurant. Also of particular significance for this case is the fact that the parties expressly contemplated that the two documents would have coextensive terms. Indeed, the Motel License provides that it would automatically terminate upon

---

2. The Motel License provides as follows:
   This License Agreement is entered into by the Company in contemplation of the construction of a Howard Johnson's Restaurant upon certain lands contiguous to the above described premises under the terms of that certain Lease between Orlando Executive Park, Inc., as Lessor, and Howard Johnson Incorporated of Florida, as Lessee, of even date herewith. In the event that Lessor, one of the Licensees herein, shall fail to construct said restaurant and land improvements and deliver the same to the Lessee for its use and occupancy according to the terms of said lease, the Company shall have the right and option of cancelling this License Agreement upon thirty (30) days written notice.
   Motel License, ¶ 31. The Restaurant Lease provides as follows:
   This Lease is entered into by Lessee in contemplation of the construction of a Howard Johnson's Motor Lodge upon certain lands contiguous to the demised premises under the terms of that certain License Agreement from Howard Johnson's Motor Lodges, Inc. to the Lessor herein and Charles W. Clayton, Jr. and W. Malcolm Clayton, as Licensees, of even date herewith. In the event that said Motor Lodge and land improvements are not constructed in accordance with the terms of said License Agreement, the Lessee shall have the right and option of cancelling this Lease upon thirty (30) days written notice.
   Restaurant Lease, § XXXI.

3. Paragraph 8 of the Motel License provides as follows:
   The Licensee shall upon the described premises during the term of the Agreement engage only in the business of renting motor lodge rooms and no other except with the written consent of the Company. This provision shall include but not be limited to the prohibition of the sale of all beverages (alcoholic or non-alcoholic), candies, food products or the sale of any other product or the operation of any other business upon said premises, except the sale of soft drinks, cigarettes and stamps from vending machines, newspapers, magazines, sundries and the furnishing of washing and cleaning service. The Licensee shall not furnish or permit to be furnished free of charge upon said premises any beverages, candies or food products. The Licensee will not during the term or any extension thereof, without the written consent of the Company, let, use, or permit to be used, any part of the above mentioned premises, or any other premises, owned or controlled by licensee in the vicinity of the above mentioned premises, to be used or occupied as or for a restaurant or for the sale of food; this prohibition, however, shall not apply to the operation of "Howard Johnson's" Restaurant under a license agreement with the Howard D. Johnson Company, of Quincy, Massachusetts, or its nominee, or the operation of a Howard Johnson's Restaurant by Howard Johnson Company or an affiliated or subsidiary company.
   Motel License, ¶ 8.

termination of the Restaurant Lease.[4]

Considering the entirety of the two documents, we readily conclude that the two document should be construed together as a single franchise agreement.[5] The district court's ruling to the contrary was the central error below. The foregoing error of the district court sufficiently infected the proceedings below so that a new trial is required. In particular, this error led the district to the following erroneous actions.

First, prior to trial the district court dismissed the Claytons' claim that the Motel License and the Restaurant Lease, construed together as a single transaction, imposed upon Marriott and New Howard Johnson a duty to provide bar services, banquet services and room service to the motel. The Claytons claimed that the defendants had such a duty and breached the contract by failing to discharge the duty. The district court read the two documents as separate and independent, rather than construing them as integral parts of a single transaction. The district court found each document to be unambiguous and to impose no such duty. Because it found the documents to be unambiguous, the district court also excluded any parol evidence indicating that the parties intended such a duty. For the reasons that follow, we conclude that the district court erroneously dismissed the Claytons' claim against both defendants and erroneously excluded such parol evidence. As discussed above, the district court erred in construing the two documents as separate and independent. When the two documents are properly con-

strued together as governing a single transaction, we conclude that the documents are ambiguous with respect to whether or not a duty is imposed on the defendants to provide the various food services to the motel. The Motel License prohibited the Claytons from providing food services to the motel, except through the adjacent Howard Johnson's Restaurant. Yet, the Motel License itself acknowledged that the "major key" to the success of the Howard Johnson's Motor Lodge franchise system was the presence of a Howard Johnson's Restaurant adjacent to each motel. In addition, both the Motel License and the Restaurant Lease expressly contemplated the contiguous presence of the other facility. Finally, the documents contained provisions which assured the parties that the two documents could have coextensive terms; indeed, the Motel License provided that it would automatically terminate upon termination of the Restaurant Lease. We conclude that these provisions support a strong inference that the parties contemplated that food services would be provided to the motel through the restaurant.

■ We conclude that the documents are ambiguous as to whether or not Old Howard Johnson had a duty to provide food services to the motel. Thus, parol evidence as to the intention of the parties was admissible. If Old Howard Johnson had such a duty, New Howard Johnson, as assignee of the Motel License, inherited such duty. Similarly, Marriott, as successor to Old Howard Johnson, inherited such duty.

---

4. The Motel License provides as follows:
   The Company and the Licensees shall have the right and option to extend the term of this Agreement for a period of time equivalent to any extended term of that certain Howard Johnson Restaurant Lease dated the date hereof, covering adjacent premises; it is the intention of the parties hereto that in the event the term of said restaurant lease is extended, the Company and the Licensee shall have the right and option to extend the term of this Agreement so that the term of said lease shall be concurrent with the term of this Agreement; provided, however, that upon termination of said restaurant lease, this License Agreement shall automatically terminate except for the obligations of the Licensees as set forth in Paragraph 15 herein.

Motel License, ¶ 29.

5. In support of their argument that the two documents are separate and independent, Marriott and New Howard Johnson rely upon the fact that each was freely assignable by Old Howard Johnson. While this has been considered a relevant factor in some of the cases, it is not conclusive. As we discuss below, any assignee of Old Howard Johnson would inherit the benefits and obligations of Old Howard Johnson. In addition, Marriott and New Howard Johnson rely upon the integration clauses in each document. Again, such clauses are not conclusive. In fact, the integration clause in the Motel License specifically contemplates "similarly executed instruments." Motel License, ¶ 20.

Thus, the district court erred in dismissing this claim as against both defendants. On remand, the Claytons shall be entitled to present to a jury their claim against both defendants that the two documents, construed together as a single contract, are ambiguous as to whether the defendants owed a duty to provide the various food services to the motel, that parol evidence supports the existence of such a duty, and that the contract was breached by failing to discharge the duty. The Claytons shall be entitled on remand to present this claim to the jury along with their modification claim (i.e., that the subsequent course of conduct of the parties confirmed, or alternatively created, such duty).

■ The district court's basic error in construing the documents contributed to a second erroneous decision. At the close of the Claytons' case, the district court directed a verdict against the Claytons and in favor of New Howard Johnson dismissing the Claytons' modification claim as against New Howard Johnson. Since Old Howard Johnson was the responsible party under the single contract including both the motel and the restaurant, and since New Howard Johnson took an assignment of part of that single contract (i.e., the Motel License) New Howard Johnson assumed Old Howard Johnson's obligations vis-a-vis the motel. Contrary to the view of the district court, New Howard Johnson (along with Marriott) inherited any obligation relating to the provision of food service to the motel which arose out of Old Howard Johnson's conduct during the course of the single contract.

■ The district court's erroneous separation of the two documents led to a final error: its failure to grant the Claytons' post-trial motion for new trial vacating the verdict against the Claytons on New Howard Johnson's counterclaim for failure to pay royalties. The Claytons' position was that the Motel License and the Restaurant Lease constituted a single contract which imposed a duty upon Old Howard Johnson to provide food services to the motel and that the failure to discharge this duty constituted just cause for the Claytons' failure to pay royalties. The Claytons were entitled to present to the jury the claim that the parties originally intended such a duty, along with their claim that the conduct of the parties confirmed, or alternatively created, such a duty, and that the failure to discharge the duty constituted a breach of the contract and a justification for the Claytons' decision to stop paying royalties. As discussed above, the district court's pretrial ruling precluded presentation of the former claim. Accordingly, the verdict in favor of New Howard Johnson must be vacated,[6] and the issue must be properly framed and submitted to a jury on retrial.[7]

**6.** Moreover, our review of the instructions to the jury make it clear that the jury charge failed to convey to the jury the notion that the two documents constituted a single contract, and that if the jury found that Old Howard Johnson had a duty to provide food services to the motel, and found that such duty was a material provision of the overall contract, and found that such duty was breached, then such breach could constitute a justification for the Claytons' decision to stop paying royalties.

**7.** The Claytons have not argued on appeal that the verdict against the Claytons and in favor of New Howard Johnson in the amount of $301,-683.29 for trademark infringement is in any way tainted by the actions of the district court that we have found erroneous. Accordingly, that verdict and so much of the judgment of the district court implementing that verdict is left undisturbed. Similarly, the Claytons have not articulated any such taint in the verdict against the Claytons and in favor of New Howard Johnson in the amount of $137,355.59 for breach of the Communication Systems agreement and the N.O.C. agreement. Accordingly, that verdict and so much of the judgment of the district court implementing same is left undisturbed. In addition, the Claytons' brief on appeal challenges the district court's ruling that the alleged diminution in the reputation of Old Howard Johnson did not constitute a breach of the Motel License and the Restaurant Lease. We find no merit in this argument and so much of the judgment of the district court implementing this ruling is left undisturbed. Finally, the Claytons present an alternative argument—i.e., if the two documents were deemed to be separate and independent contracts, there was an antitrust violation by virtue of the tying of two products. Because we hold that the Motel License and the Restaurant Lease are part of a single contract, and because the Claytons have made no claim that there is any antitrust violation in such circumstances, we need not address the merits of the Claytons' antitrust argument. Accordingly, so much of the judgment of the district court

### B. *Marriott's Appeal of the Verdict Against It*

The foregoing section of this opinion demonstrates that the Claytons have a viable claim against Marriott for breach of the duty to provide bar services, banquet services, and room service to the motel. As noted above, the district court permitted only part of that claim to go to the jury, i.e., the Claytons' modification claim against Marriott. The jury found for the Claytons and against Marriott in the amount of $421,412.45.

Marriott argues that the evidence is insufficient to support the award for lost profits because (1) the Claytons failed to prove that the actions of Marriott in terminating the restaurant services caused any damages and (2) the Claytons failed to present evidence of their expenses and thus failed to prove the amount of their lost profits. We address each of these arguments in turn.

■ At the outset, Florida law requires that a party seeking lost profits must prove that defendant's actions caused the loss and that the amount of loss can be established with reasonable certainty. *New Amsterdam Casualty Co. v. Utility Battery Mfg. Co.*, 122 Fla. 718, 166 So. 856 (1935); *R.A. Jones & Sons, Inc. v. Holman*, 470 So.2d 60 (Fla.App.1985), *review dismissed sub. nom., Ford Motor Co. v. R.A. Jones & Sons, Inc.*, 482 So.2d 348 (Fla.1986). Marriott argues that there is a complete absence of evidence establishing a causal connection between the cessation of room service, banquet service and the operation of the lounge by Marriott and a loss in the profits or value of the motor lodge. We disagree.

At trial, Malcolm Clayton testified that gross revenues fell from approximately 2.2 million to 1.7 million during the time in which Marriott implemented the food service cuts to the motor lodge. In addition, Clayton testified that room occupancy in the motor lodge dropped from approximately 66% to approximately 54% during the time period in which Marriott discontinued

operating the lounge and providing coffee service to the banquets. Clayton testified that long-standing customers canceled their reservations upon learning that food service would not be available. The Clayton's director of sales testified the volume of business declined following the discontinuation of banquet services and catering. This evidence is sufficient to satisfy the causation requirement between the actions of Marriott in discontinuing food services and the damages suffered by the Claytons.

Next, Marriott appeals the amount of lost profits recovered by the Claytons. Marriott argues that the Claytons did not adequately prove lost profits because they presented evidence only of gross revenue and failed to introduce evidence concerning expenses.

■ In order to recover for lost future profits, a party must prove income and expenses of the business for a reasonable time prior to the alleged breach. *Electro Services, Inc. v. Exide Corp.*, 847 F.2d 1524, 1527 (11th Cir.1988); *New Amsterdam Casualty Co. v. Utility Battery Mfg. Co.*, 122 Fla. 718, 166 So. 856, 860 (1935); *Born v. Goldstein*, 450 So.2d 262 (Fla. App.), *review dismissed, Goldstein v. Born*, 458 So.2d 272 (Fla.1984). If the party presents evidence only of gross receipts or fails to prove expenses with some specificity, an award of damages relating to lost profits will be reversed. *Born v. Goldstein*, 450 So.2d at 264; *American Motorcycle Institute v. Mitchell*, 380 So.2d 452, 453 (Fla.App.1980), *overruled on other grounds by Ault v. Lohr*, 538 So.2d 454 (Fla.1989). While an inability to provide an exact or precise amount will not preclude recovery, *Electro Services, Inc.*, 847 F.2d at 1527 (citing Florida law), the evidence must establish lost profits with reasonable certainty such that an impartial and prudent mind would be satisfied. *Twyman v. Roell*, 123 Fla. 2, 166 So. 215, 218 (1936); *New Amsterdam Casualty Co. v. Utility Battery Mfg. Co.*, 122 Fla. 718, 166 So. 856 (1935); *Electro Services, Inc.*, 847 F.2d at 1527.

implementing the dismissal of the Claytons' an-

titrust claim is left undisturbed.

Malcolm Clayton testified as to the gross damages occasioned by Marriott's failure to provide restaurant service and banquet service to the motor lodge. Clayton also testified that based on his recollection of recent tax returns, the motor lodge had net losses between $200,000 and $300,000 per year. Clayton, however, did not present the tax returns or explain how these figures had been reached. In addition, the Claytons presented the daily room revenue reports and the weekly transmittal reports (a report setting forth room sales and cash flow). However, these reports refer to gross rather than net revenue or profits.

While Clayton's testimony regarding net losses provides some evidence of lost profits, and while the jury had sufficient evidence to conclude that the Claytons sustained substantial damages because of Marriott's breach, we cannot conclude that the great weight of the evidence supports a determination of any amount of lost profits with reasonable certainty as required by Florida law. Therefore, while we decline to reverse the district court's denial of judgment notwithstanding the verdict, we do reverse the district court's denial of a new trial on this issue.

## IV. CONCLUSION

For the foregoing reasons, and to the extent indicated in this opinion, the judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

REVERSED and REMANDED.