**AMOCO OIL COMPANY, Plaintiff,**

v.

**Caroline GOMEZ, Defendant.**

**No. 99–1223–CIV.**

United States District Court, S.D. Florida.

Dec. 19, 2000.

Moises Melendez, Heinrich, Gordon, Hargrove, Weihe & James, PA, Ft. Lauderdale, FL, for plaintiff.

Raul E. Garcia, Miami, FL, for defendant.

## ORDER ON PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

GOLD, District Judge.

**THIS CAUSE** is before the court upon the plaintiff's, Amoco Oil Company ("Amoco"), motions for summary judgment (DE # 102, 103). Amoco filed a complaint against the defendant, Caroline Gomez ("Gomez"), alleging two counts of breach of contract that stemmed from the parties' Commission Marketer contracts. According to Amoco, Gomez breached their agreements by failing to pay all the commission receipts owed to Amoco and by closing down her gas station. Gomez filed a counterclaim against Amoco for fraud in the inducement (count I), breach of fiduciary duty (count II), and breach of contract (count III). Gomez alleges that after she took possession of the gas station, she learned that there were environmental problems that had to be fixed, Amoco was aware of these problems before Gomez purchased the station, Amoco promised to remedy them, and Amoco never fulfilled its promises. The court has subject matter jurisdiction by virtue of diversity jurisdiction, and there is no dispute that this case is governed by Florida substantive law. *See Sierminski v. Transouth Fin. Corp.,* 216 F.3d 945, 950 (11th Cir.2000).

Amoco has filed two motions for summary judgment. The first motion seeks partial summary judgment on Amoco's breach of contract claims (DE # 102). Amoco's second motion seeks summary judgment on Gomez's counterclaims (DE # 103). The court heard oral argument on both motions on October 27, 2000. After carefully considering the pleadings and the arguments of counsel, the court denies Amoco's motion for summary judgment on its breach of contract claims and grants in part Amoco's motion for summary judgment on Gomez's counterclaim.

## The Undisputed Facts[1]

### I. The Facts Supporting Amoco's Breach of Contract Claims

Gomez began operating Amoco's gas station in March of 1997, when her corporation (Rocabaja Corp.) purchased the station from a third party (Gemar Service Station, Inc.). On March 12, 1997, Gomez entered into a one-year Trial Franchise Lease with Amoco. *See* Pl.Ex. 1A. This agreement was followed by an extended three-year lease in January of 1998. See Pl.Ex. 1B. Before the expiration of the January agreement, the parties entered into a mutual cancellation of that agreement and executed the contracts that are the subject of this dispute. These contracts are the Commission Marketer Lease and the Commission Marketer Agreement, which were executed on September 17, 1998. *See* Pl.Ex. 1E, 1F.[2] These agreements were to govern the parties for four years.

Under these contracts, Gomez became an independent contractor engaged in selling fuel owned by Amoco at 7070 West Flagler Street, Miami, Florida. The Commission Marketer Lease obligated Gomez to pay Amoco rent of $2,960 per month for four years and to maintain the gas station open for business twenty-four hours per day, seven days per week, including holidays. *See* Pl.Ex. 1E, ¶¶ 4C, 12A. Under the parties' preexisting franchise agree-

---

**1.** In support of its motions for summary judgment, Amoco submitted statements of material facts for which there are no genuine issues to be tried. Gomez did not controvert these statements, and, as a result, they are deemed admitted under S.D.Fla.L. 7.5. Instead, Gomez submitted a statement of additional facts to support its counterclaims, affirmative defenses, and opposition to Amoco's motions for summary judgment. Any facts disputed by Amoco are discussed in more detail below.

**2.** In support of its motions to dismiss, Amoco has filed sixteen exhibits, which include the affidavit of James Moran (Regional Sales Manager) and supporting documents, three depositions, various agreements, and copies of correspondence. In support of her opposition, Gomez has filed thirty-four exhibits, which include the Commission Market Agreements, sixteen depositions, environmental testing reports, and copies of correspondence.

ment, Gomez would purchase fuel from Amoco and sell it at her station at whatever price she chose to set. During oral argument, the parties explained how Gomez's obligations changed when she became a commission marketer. Under the Commission Marketer Agreement, Amoco would deliver fuel to Gomez at no cost to her. The fuel would be sold to customers at a price set by Amoco, and only then would Gomez remit the proceeds of the sale to Amoco, less a 3.4 cents per gallon commission for herself. Amoco would withdraw these proceeds electronically from Gomez's account. The Commission Marketer Agreement obligated Gomez to properly and promptly account to Amoco for all gross receipts and to maintain the gas station open for business twenty-four hours per day, seven days per week, including holidays. *See* Pl.Ex. 1F, ¶¶ 1–2, 7, 10, 23A(7), 26. Prior to executing these agreements, Gomez had forty-two days to review them.[3] She also signed a Franchise Disclosure Questionnaire, which indicated that she had reviewed the agreements but did not understand all of their provisions. See Pl.Ex. 1H. Whether or not Gomez discussed the risks and benefits of the agreements with her accountant and/or attorney is disputed by the parties. *See* Pl.Ex. 1H; C. Gomez Depo. at pp. 136–37.

Amoco claims that Gomez breached the agreements in several ways. As for the Lease, Gomez failed to pay rent since March of 1999, when she closed down and abandoned the gas station. Amoco alleges that Gomez breached the second agreement by failing to pay Amoco all of the commissions due to it, failing to promptly and properly account for all gross receipts, and closing down and abandoning the gas station prior to the expiration of their agreements. Amoco also claims that Gomez retained proceeds from gas sales in the amount of $37,1182.27. *See* Pl.Compl., Ex. D.

## II. The Facts Supporting Gomez's Affirmative Defenses and Counterclaims

With the exception of the amount of commission allegedly withheld by Gomez, Gomez does not dispute any of the allegations discussed in the preceding section. Instead she claims that Amoco made two major misrepresentations. First, it failed to inform her that the gas station she purchased did not comply with environmental regulations. Second, it promised to repair fuel dispensing equipment that became defective, but it never completed the repairs successfully. According to Gomez, these facts justify her abandonment of the gas station and failure to pay Amoco the commissions due under their agreements. Gomez also argues that these facts entitle her to relief under her counterclaim.

When Gomez began operating the gas station, she believed that the site was in good order, and she acknowledged this in her original lease with Amoco. *See* Pl.Ex. 1A, ¶ 9. On June 3, 1997, however, less than one month after Gomez began operating the gas station, inspectors from the Miami–Dade Department of Environmental Resource Management ("DERM") arrived at the premises to conduct environmental tests, which revealed that the gas station did not comply with applicable regulations. *See* Def.Ex. T. Although Gomez was not aware that an inspection would be conducted nor that the station had failed to comply with environmental regulations in the past, a DERM inspector told Gomez that Amoco had known about this before she had purchased the gas station. *See* C. Gomez Depo. at p. 65. In fact, the record establishes that Amoco knew that environmental problems (such as soil contamination by leaking gasoline and vapor recovery problems) had existed on the site since 1989. *See* Def.'s Ex. H, FF; Coil Depo. at pp. 47, 52–54, 63–68, 75, 94–95; Wong Depo. at pp. 8–9. Amoco had been corresponding with DERM and environmental

---

**3.** This figure was not disputed by the parties during oral argument.

consultants about these problems since November of 1995.

When Gomez informed Amoco of the test results, Amoco told Gomez that the gas station would need to undergo construction for the purposes of installing a vapor recovery system. *See* C. Gomez Depo. at pp. 62–63; Alvear Depo. at p. 33. The construction at the gas station was extensive, and it caused Gomez to close the business for one month. *See* C. Gomez Depo. at p. 45. Once the construction was completed in September of 1997, Gomez noticed that the gas pumps had been adversely affected. They often would pump gas slowly or stop pumping altogether. Prior to the construction, Gomez had experienced no problems dispensing fuel. As a result of the pumps' defects, customers often would complain, insult the employees, and demand that their money be returned. *See* C. Gomez Depo. at pp. 101, 104. Gomez continued to lose business over time, and, despite her complaints to Amoco, the equipment's problems were not remedied. Amoco claims that the pump defects eventually led her to close the gas station on March 31, 1999.

As soon as Gomez became aware of the pump defects, she contacted Amoco. Gomez claims that in September of 1998, Alex Escardo, an Amoco representative, told her that if she would sign the agreements that are the subject of this dispute, Amoco would fix the problem at her station and she would be permitted to keep her lease incentives (a rent of $2,960 per month instead of $7,229 per month). *See* C. Gomez Depo. at p. 87; Escardo Depo. at pp. 22, 25. Although the maintenance of the underground equipment was Amoco's responsibility under the Commission Marketer Agreement, Amoco was not able to remedy the problem successfully,[4] and, to date, it has not attempted find anyone to operate the station. *See* Def.Ex. W; Moran Depo. at p. 25.

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment where the pleadings and supporting materials show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. Sept. 1997). The moving party has the burden to establish the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Tyson Foods, Inc.,* 121 F.3d at 646. Once the moving party has established the absence of a genuine issue of material fact, to which the nonmoving party bears the burden at trial, it is up to the nonmoving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Issues of fact are genuine only if a reasonable jury, considering the evidence presented could find for the nonmoving party. *See Anderson,* 477 U.S. at 247–51, 106 S.Ct. at 2510–11. In determining whether to grant summary judgment, the district court must remember that, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are

---

4. Amoco sent contractors to the gas station to repair the equipment problems. At times, the contractors found nothing wrong with the pumps. When the contractors did find problems with the pumps, they attributed them to cut wires or foreign materials that had found their way into the pumps. *See* Pl.Ex. 1K. It therefore is not clear whether the gas pumps' defective operation was due to the construction that was undertaken to remedy the environmental problems or other causes.

jury functions, not those of a judge." *Id.* 477 U.S. at 255, 106 S.Ct. at 2513.

These principles are equally applicable when, as in this case, the plaintiff is seeking entry of summary judgment, and the defendant has asserted affirmative defenses. On a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable. *See Blue Cross and Blue Shield v. Weitz,* 913 F.2d 1544, 1552 (11th Cir.1990); *Office of Thrift Supervision v. Paul,* 985 F.Supp. 1465, 1470 (S.D.Fla.1997); *Chatham Steel Corp. v. Brown,* 858 F.Supp. 1130, 1154 (N.D.Fla. 1994). Only upon such a showing does the burden shift to the plaintiff regarding that affirmative defense. *See Weitz* at n. 13. The reason is that the defendant bears the burden of proof on his or her affirmative defense at trial. *See Thorsteinsson v. M/V Drangur,* 891 F.2d 1547, 1550–51 (11th Cir.1990). Summary judgment is therefore appropriate when the defendant fails to come forward with evidence sufficient to dispute an element of the plaintiff's case or to support an affirmative defense. *See Office of Thrift Supervision v. Paul,* 985 F.Supp. 1465, 1470 (S.D.Fla.1997).

### Analysis

### I. Amoco's Motion for Summary Judgment on Its Claims

#### A. Breach of the Commission Marketer Lease and Agreement

Amoco seeks summary judgment on its breach of contract claims. It argues that Gomez has breached both agreements by closing down and abandoning the gas station before the expiration of the agreements; failing to keep the gas station open seven days a week, twenty-four hours per day, including holidays; and failing to properly and promptly account for profits. Gomez has asserted affirmative defenses

that go to each of these allegations, and there are genuine issues of material fact as to some of those defenses.

Even if this were not true, Amoco would not be entitled to summary judgment on Gomez's liability because genuine issues of material fact also exist as to Amoco's allegations that Gomez failed to properly account for profits in breach of the Commission Marketer contracts.[5] During oral argument, the parties spent a considerable amount of time discussing this issue. Without dispute, Amoco was not reimbursed for all of the fuel it pumped into Gomez's station. The parties do dispute, however, the cause of the nonpayment and the amount allegedly due to Amoco. Amoco claims that Gomez simply paid herself one hundred percent of the price of the fuel she sold, rather than 3.4 cents per gallon, as provided by the Commission Marketer Agreement. Gomez, on the other hand, denies that she was stealing funds from Amoco or failing to improperly account for fuel proceeds. She argues that, because Amoco automatically withdrew the funds to which it was entitled from her bank account, she cannot be liable for failing to tender a check to Amoco. According to Gomez, there simply were insufficient funds in the account because she was operating at a loss and was forced to close that account, not because she was stealing funds from Amoco or failed to properly account for fuel proceeds. Gomez also relies on the record's silence as to how many gallons of fuel were not paid by Gomez as indicative of a jury question on her alleged failure to properly account for fuel proceeds.

As additional grounds for her opposition to Amoco's motion for summary judgment, Gomez claims that the facts alleged by Amoco in its statement of undisputed material facts are not the only relevant cir-

---

5. There is no dispute that Gomez closed down the gas station prior to the expiration of the parties' agreements and that, absent Gomez's affirmative defenses, this would constitute a breach of the agreements. *See Burger King* *Corp. v. Barnes,* 1 F.Supp.2d 1367 (S.D.Fla. 1998) (granting summary judgment where defendant abandoned restaurant he was contractually obligated to operate).

cumstances that surround this case. Gomez argues that her affirmative defenses and the facts that support these defenses are also sufficient to overcome Amoco's motion for summary judgment. The court agrees with Gomez for the reasons discussed in the following section.

## B. Gomez's Affirmative Defenses

Gomez's answer to Amoco's complaint raises eight affirmative defenses. These defenses are:

1. All damages incurred by Amoco were caused by Amoco's failure to properly maintain the gas station's fuel dispensing equipment.

2. The Commission Marketer Lease and Agreement were executed under duress and undue influence and in violation of the Petroleum Marketing Practices Act, 15 U.S.C. § 2801–06.

3. All damages incurred by Amoco were caused by Amoco's own breach of the Commission Marketer Lease and Agreement.

4. All damages incurred by Amoco are offset by the damages incurred by Gomez as a result of Amoco's fraudulent conduct that predated the Commissioner Marketer Lease and Agreement and as a result of Amoco's breach of the parties' initial Lease and Trial Franchise Agreements, which were executed in April of 1997.

5. The Commissioner Marketer Lease and Agreement were executed by Gomez in reliance on misrepresentations of material fact made by Amoco, namely that it would correct the problems with the gas station's fuel dispensing equipment.

6. Amoco's failure to provide and maintain the fuel dispensing equipment

frustrated the purpose of the Commission Marketer Lease and Agreement and discharged Gomez from all obligations under those contracts.

7. Gomez's failure to adequately provide and maintain the fuel dispensing equipment created an unanticipated difficulty and expense for Gomez that discharged Gomez's obligations under the Commissioner Marketer Lease and Agreement.

8. Amoco has failed to mitigate its damages.

*See* Def.'s Answer at pp. 2–3. The remainder of this section discusses each of these affirmative defenses in light of the parties' burdens with respect to Amoco's summary judgment motions.

### 1. First and Third Defenses

Gomez's first and third affirmative defenses are that Amoco caused its own damages by failing to properly maintain the gas station's fuel dispensing equipment and by being the first party to breach the Commission Marketer Lease and Agreement. These defenses rely on the principle that "[h]e who prevents a thing being done cannot avail himself of the nonperformance which he has occasioned." *United States v. Peck*, 102 U.S. 64, 12 Otto 64, 26 L.Ed. 46 (1880) (holding that defendant was excused for contractual nonperformance where plaintiff prevented his performance).[6]

■ Under Florida law, parties who prevent performance of a contract by their own acts cannot take advantage of their own wrong. *See North Am. Van Lines v. Collyer*, 616 So.2d 177, 179 (Fla. 5th DCA 1993). This is because "when a person contracts for the doing of a certain thing with another, he impliedly promises that he will not himself do anything to hinder or obstruct the performance by the other person." *Gulf Am. Land Corp. v. Wain*,

---

**6.** At the outset, Amoco argues that Gomez may not properly assert these defenses because of her alleged wrongful detention of fuel proceeds. The court must reject this

argument because, as discussed above, there is a dispute as to whether Gomez actually retained funds wrongfully from Amoco.

166 So.2d 763, 764 (Fla. 3d DCA 1964) (holding that party who prevented performance of contract was in breach of that agreement); *cf. Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999). A Florida court has stated, "When one of the contracting parties prevents or hinders the performance or the acts of the other contracting party required to be performed, or prevents the discharge of a contractual duty, then such actions are generally considered to be a breach of the contract, although not specified and delineated in the written instrument." *Gulf Am. Land Corp.*, 166 So.2d at 764.

According to Gomez's first affirmative defense, Amoco cannot assert a breach of contract claim against her because it prevented her from performing her obligations under the Commission Marketer Agreement and Lease. That is, if Amoco had maintained the fuel pumps in proper working order, Gomez would not have closed down and abandoned the gas station because she would have been making a profit. *See Metropolitan Dade County v. Worsham Bros. Co., Inc.*, 563 So.2d 1107, 1107–08 (Fla. 3d DCA 1990) (holding that genuine issue of material fact as to whether plaintiff intentionally caused delays that prevented defendant from completing contract on time prevented plaintiff from enforcing contractual limitations provision); *Nitram, Inc. v. Cretan Life*, 599 F.2d 1359, 1372 (5th Cir.1979) [7] (holding that party who prevented other party from performing under contract could not recover damages). Gomez's third affirmative defense presents a similar argument. If Amoco had maintained the gas station in working order as it was required to do by paragraph twenty of the Commission Marketer Agreement, Gomez would not have breached the agreement by closing down the gas station.

### a. Preliminary Issues

■ Amoco argues that Gomez's first and third defenses must be rejected be-cause the Commission Marketer Lease and Agreement are independent of each other, and only the Commission Marketer Agreement, not the Lease, required Amoco to maintain the fuel pumps. Amoco also compares this case to the typical landlord-tenant scenario, where the landlord's obligation to repair is independent of the tenant's obligation to pay rent. *See In re Tut's Pyramid, Inc.*, 178 B.R. 867, 871 (Bkrtcy.M.D.Fla.1995) (holding that commercial tenant's obligation to pay rent was not excused by landlord's failure to repair roof leaks). According to Amoco, its failure to repair the fuel pumps does not justify Gomez's breach of the lease because the general rule requires Gomez to pay rent even if Amoco fails to repair.

Gomez relies on both case law and the language of the Commission Marketer contracts to refute Amoco's argument that the agreements are independent of each other. Gomez cites to Florida law, which provides that "two or more documents executed by the same parties, at or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract." *Citicorp Real Estate v. Ameripalms 6B GP, Inc.*, 633 So.2d 47, 49 (Fla.App.3d DCA 1994) (citing *Clayton v. Howard Johnson Franchise Sys., Inc.*, 954 F.2d 645 (11th Cir.1992)). The agreements at issue in this case were both executed by Amoco and Gomez on September 17, 1998. These agreements had the common purpose of enabling Gomez to dispense Amoco fuel through Amoco fuel pumps for a profit. As such, both agreements constitute a single contract. *See Shell Oil Co. v. A.Z. Svcs., Inc.*, 990 F.Supp. 1406, 1408 (S.D.Fla.1997) (finding that petroleum franchise was established by executing both Deal Agreement and Fuel Station Lease). Contrary to Amoco's assertion, the breach of one constitutes the breach and cancellation of the other.

---

7. The Eleventh Circuit has adopted as binding precedent all cases decided by the former Fifth Circuit Court of Appeals prior to the close of business on September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981).

This principle is embodied in the Commission Marketer contracts themselves, each of which provides that one contract terminates upon the termination, nonrenewal, or expiration of the other. *See* Pl.Ex. 1E at ¶ 19D, 1F at ¶ 23D. Further evidence of the contracts' interrelatedness appears in other provisions of the agreements. *See, e.g.,* Pl.Ex. 1E at ¶¶ 2 ("Tenant shall operate the motor fuel sales facility ... according to the terms of the Commission Marketer Agreement ('CMA')."), 3 ("Tenant shall only have the right to renew this Lease if Tenant also effectively renews the CMA."), 17C (conditioning consent to assignment on agreement of proposed assignee to enter into CMA); 1F at ¶¶ 1 ("Amoco shall supply of all motor fuels for sale at the Fuel Facility. ..."); 2 (describing Amoco's discretionary right to make changes in Lease and any related agreements). This language is further evidence that each agreement incorporates the other. *See Management Comp. Controls, Inc. v. Charles Perry Constr., Inc.,* 743 So.2d 627, 631 (Fla.App. 1st DCA 1999) (holding that license agreement became incorporated by reference into sales contract).

Because the agreements incorporate each other, it follows that a breach of the terms of the Commission Marketer Agreement constitutes a breach of the Lease, and vice versa. A similar result was reached in *Clayton v. Howard Johnson Franchise Systems, Inc.,* 954 F.2d 645 (11th Cir.1992), where the court found that a jury issue existed as to whether a hotel chain's failure to provide food services canceled the parties' overall agreement. The parties in *Clayton* executed two contracts—a motel license and a restaurant lease. *See id.* at 646. According to the court, the parties had entered into one overall contract because their agreements were executed on the same day between the same parties, regarded the operation of a hotel on the same land, and automatically terminated upon the termination of the other. *See id.* at 648–49. Accordingly, the court allowed the plaintiff to present evidence that the failure of the hotel chain to provide food services under one agreement discharged the plaintiff of its obligation to pay royalties under the other.

■ Application of *Clayton* to this case means that if Amoco did in fact breach its obligation under the Commission Marketer Agreement to repair the fuel dispensing equipment and this breach justified Gomez's termination of that agreement, the Commission Marketer Lease also would have been terminated by Amoco's actions. This result is dictated not only by case law, but by paragraph 19D of the Lease, which states, "This Lease shall terminate upon the termination, nonrenewal or expiration, for any reason, of the Commission Marketer Agreement." Pl Ex. 1E. This contractual provision overrides the principle relied on by Amoco that a landlord's obligation to repair survives a tenant's obligation to pay rent. *Cf. Yanks v. Truly Nolen, Inc.,* 341 So.2d 829, 832 (Fla. 3d DCA 1977) (holding that breach of a dependent lease covenant justifies rescission of entire agreement).

### b. The Merits

■ Amoco is not entitled to summary judgment on its claims because Gomez has satisfied her burden of affirmatively demonstrating that her first and third affirmative defenses are applicable and that there is evidence in the record to support them. Gomez has presented her own deposition testimony and that of her husband to show that the gas pumps would work slowly or not at all after Amoco began construction to comply with environmental regulations. *See* C. Gomez Depo at p. 18; R. Gomez Depo. at pp. 78–79, 81. Gomez also has shown that she made Amoco aware of this problem. *See* Escardo Depo. at pp. 12–13; Downes Depo. at pp. 29, 31. Amoco has failed to establish that it repaired the defective pumps or otherwise complied with its contractual obligations. Such evidence is sufficient to create genuine issues of material fact as to whether or not Amoco was the first party to breach the contracts.

If the facts supporting Gomez's affirmative defenses are true, and Amoco did breach the parties' agreements, then Gomez will have had good cause to abandon the lease and may not be held liable for Amoco's claims.[8]

## 2. Second Defense

**Duress and Undue Influence:** Gomez's second affirmative defense asserts that the Commission Marketer Agreement and Lease were executed under duress and undue influence. Amoco argues that the facts surrounding the execution of these contracts are insufficient to establish Gomez's defense because Gomez had two weeks to review the contracts, acknowledged that she had reviewed them with an attorney or accountant, and agreed that no one from Amoco made her any promises in connection to the agreements. The court concurs with Amoco.

■ The doctrine of economic duress permits an aggrieved party to rescind an agreement that was entered into under severe financial anxiety or pressure.[9] Establishing a case of economic duress is extremely difficult. The aggrieved party must show: (1) wrongful acts or threats, (2) financial distress caused by the wrongful acts or threats, and (3) absence of a reasonable alternative course of action. *See Humer v. Internal Revenue Serv.,* 1995 WL 366032 *3, No. 94–0982–CIV (S.D.Fla., Feb. 17, 1995) (finding that plaintiff failed to establish elements); *G.E.E.N. Corp. v. Southeast Toyota Distrib., Inc.,* 1994 WL 695364 *5, No. 93–632–CIV (M.D.Fla., Aug. 31, 1994) (same). In essence, the party seeking to rescind the contract must show "that the act sought to be set aside was effected involuntarily and thus not as an exercise of free choice or free will. . . ." *Finn v. Prudential–Bach Sec., Inc.,* 821 F.2d 581, 587 (11th Cir.1987) (quoting *City of Miami v.*

*Kory,* 394 So.2d 494, 497 (Fla. 3d DCA 1981), which found that plaintiff could not establish economic duress because her resignation was her own choice).

■ Gomez cannot establish duress in this case because she cannot show that there was no other reasonable course of action other than signing the Commission Marketer contracts, nor can she show that her will to refuse to enter into the agreements was overcome. According to Gomez, she had no other choice but to enter into the agreements because, if she did not, Amoco would refuse to repair the defective pumps and withdraw the privileges she was enjoying, such as reduced rent. Gomez's argument fails because she did have alternative courses of conduct available to her. She could have refused to sign the agreements, continued under the terms of the old agreement, and sold the business upon the expiration of the lease. Alternatively, Gomez could have prosecuted her claims against Amoco in a court of law and compelled Amoco to repair the pumps as it was obligated to do under their existing agreement. *See Kory,* 394 So.2d at 499 (stating that plaintiff's action was not involuntary because she should have filed suit rather than resign and citing *C. & J. Michel Brewing Co. v. State,* 19 S.D. 302, 103 N.W. 40 (1905), which held that party's payment of objectionable tax debts were not product of duress where party could have filed protective suit). Because these alternative courses were reasonable, and Amoco did not prevent Gomez from pursuing them, Gomez cannot establish economic duress as an affirmative defense.

■ Gomez also claims that she did not understand the provisions of the Commission Marketer contracts and that she indicated this on a separate questionnaire Amoco provided to her. Gomez had forty-

---

**8.** This conclusion presupposes that the jury does not find that Gomez wrongfully withheld fuel proceeds from Amoco.

**9.** This order discusses only economic duress because Gomez did not pursue her undue influence argument in her opposition to Amoco's motion to dismiss.

two days to review these agreements, and during this time she could have consulted an attorney to advise her of their terms. This was not a situation where she was forced to sign the agreements the moment they were presented to her. Because Gomez had ample time to explore the meanings of the provisions, she has failed to show duress in their execution.

■ **Petroleum Marketing Practices Act:** As part of her second affirmative defense, Gomez also argues that Amoco has violated the Petroleum Marketing Practices Act ("PMPA"). *See* 15 U.S.C. §§ 2801 et seq. Gomez contends that, under this statute, Amoco was required to provide Gomez with ninety days notice prior to terminating the franchise relationship. Amoco claims that the PMPA does not apply to this case because that statute applies only in franchise relationships, and the Commission Marketer contracts did not give rise to such a relationship. *See Farm Stores, Inc. v. Texaco, Inc.,* 763 F.2d 1335, 1346 (11th Cir.1985) (holding that PMPA did not apply where Texaco owned gasoline dispensing equipment, set fuel prices, and was entitled to all proceeds of gasoline sale). Amoco's position misinterprets Gomez's argument. She does not contend that the parties' current agreements give rise to a franchise relationship, but that Amoco wrongfully converted the franchise relationship that existed until September 17, 1998 into a commission marketer relationship.

Gomez is correct that the PMPA applies to the execution of the Commission Marketer contracts because the parties were clearly franchiser and franchisee up to that point, and these agreements terminated the preexisting franchise relationship. The PMPA governs termination and non-renewal of franchise contracts, and under 15 U.S.C. § 2804, there are restrictions that limit a petroleum franchiser's ability to terminate a franchise. Subject to some exceptions that Amoco does not argue are applicable here, a franchiser must give a franchisee at least ninety days notice prior to terminating of the franchise. *See* 15 U.S.C. § 2804(a). Gomez claims that Amoco's execution of the Commission Marketer contracts is contrary to this provision because Amoco gave her forty-two days to review the contracts that would terminate the franchise relationship. Amoco has not otherwise shown that Gomez had at least ninety days to review the Commission Marketer Lease and Agreement. Accordingly, she may assert her second affirmative defense, but only as it relates to the PMPA.

### 3. Fourth Defense

■ Gomez's fourth affirmative defense is that Amoco engaged in fraudulent conduct that predated the contracts in question. The defendant has waived this defense by executing the Commission Marketer Lease and Agreement after learning about the environmental conditions of the gas station.[10] As a result, Gomez's fourth affirmative defense is stricken.

### 4. Fifth Defense

■ Gomez's fifth affirmative defense argues that the Commission Marketer Lease and Agreement were executed by Gomez in reliance on misrepresentations of material fact made by Amoco.[11] According to Gomez, Amoco misrepresented that it would correct the ongoing problems related to the fuel dispensing equipment if Gomez would sign the Commission Marketer contracts. Amoco argues that Gomez should not have relied on Amoco's statements because Amoco had been giving Gomez problems in the past. Amoco cites to

---

**10.** This issue is discussed in more detail in section II, A, below.

**11.** In her opposition to Amoco's motion for summary judgment, Gomez argues that Amoco also misrepresented the incentives she would receive under their agreement. The court has not considered this evidence in its order because Gomez failed to raise the "incentives" argument in her answer to Amoco's complaint.

*Hall v. Burger King Corp.*, 912 F.Supp. 1509, 1524 (S.D.Fla.1995), where this court stated, "Where a hostile and antagonistic relationship exists between the parties, reliance on any alleged misrepresentations is unreasonable as a matter of law." The principle from *Hall* is inapplicable to this case for two reasons. First, if any mistrust existed in this case prior to the parties executing the Commission Marketer Lease and Agreement, it did not rise to the level of antagonism that existed in *Hall*, where the relationship "was so plagued with distrust" that a party began recording his telephone conversations with the corporation. *Hall*, 912 F.Supp. at 1524; *see also Zelman v. Cook*, 616 F.Supp. 1121 (S.D.Fla.1985) (finding reliance unreasonable where plaintiff so distrusted defendant that he recorded shareholder meetings). While the record shows that Gomez distrusted Amoco to some extent because of the gas station's environmental conditions, nothing compels the conclusion that Gomez could not trust Amoco to repair the gas pumps. Second, Gomez may have been reasonable in relying on Amoco's alleged representations regarding the gas pumps because the Commission Marketer Agreement obligated Amoco to "provide and install all equipment necessary for the dispensing of motor fuels" and held Amoco responsible for "all repairs and maintenance required at the Fuel Facility". Pl.Ex. 1F at ¶¶ 1, 20.[12]

In sum, genuine issues of material fact exist as to whether or not Gomez relied on Amoco's alleged misrepresentations regarding the repair of the fuel pumps. Gomez has presented evidence, albeit her own testimony and that of her husband, that Amoco told her that it would fix the problems with her gas station if she would sign the Commission Marketer Lease and Agreements. Amoco has not contradicted

this, and, in fact, the parties' agreement obligates Amoco to maintain and repair all equipment. This evidence indicates that entry of summary judgment in favor of Amoco would be improper.

### 5. Sixth and Seventh Defenses

 Gomez's sixth defense asserts that Amoco's failure to properly maintain the fuel dispensing equipment frustrated the purpose of the parties' agreements and thereby discharged her from any obligations she had under them. Gomez's seventh defense relies on these same allegations to establish that performance of the contract was impossible. Frustration of purpose applies where one of the contracting parties finds that the purpose for which it bargained, and which purposes were known to the other party, have been frustrated because of failure of consideration or the impossibility of performance by the other party. *See Home Design Center v. County Appliances of Naples, Inc.*, 563 So.2d 767, 770 (Fla. 2d DCA 1990) (quoting *Crown Ice Machine Leasing Co. v. Sam Senter Farms, Inc.*, 174 So.2d 614, 617 (Fla. 2d DCA 1965)). Impossibility of performance refers to situations where the contract has become impossible to perform on one side. *See id.* Neither of these defenses are available if the difficulties that frustrate the purpose of the contract or make performance impossible reasonably could have been foreseen by the promisor when the parties entered into the contract. *See id.* (finding that defendant did not present evidence to show it could not have foreseen difficulties at time of contract negotiations); *see also American Aviation, Inc. v. Aero–Flight Service, Inc.*, 712 So.2d 809, 810–11 (Fla. 4th DCA 1998) (impossibility); *Tavormina v. Timmeny*, 561 So.2d 681, 683 (Fla. 3d DCA 1990) (frustration of purpose).

---

**12.** The fact that the parties' contract contained these clauses, which embodied Amoco's alleged representations, shows that Amoco's reliance on *Eclipse Medical, Inc. v. American Hydro–Surgical Instruments, Inc.*, 1999 WL 181412 *5, No. 96–8532 (S.D.Fla.,

Jan. 20, 1999) is misplaced. In that case, the court granted summary judgment where a subsequent contract contradicted the allegedly false promise, a situation that does not exist here, where the contract specifically supports Amoco's allegedly false promise.

Gomez's defenses of frustration of purpose and impossibility fail because the possibility that Amoco would not repair the fuel dispensing equipment was foreseeable. The record shows that Gomez had been aware of problems with the operation of the station since 1997. At the time Gomez and Amoco executed the Commission Marketer Lease and Agreement, Gomez knew that the problems with the fuel pumps had existed and were continuing. Merely because the Commission Marketer contracts obligated Amoco to make repairs does not mean that Gomez could not have foreseen that Amoco would not fulfill this obligation. To the contrary, it shows that the parties contemplated that possibility. Amoco has met its burden of rebutting Gomez's allegations that she could not have anticipated these problems, and, as such, Gomez's sixth and seventh affirmative defenses are stricken.

#### 6. Eighth Defense

Although Gomez does not argue her eighth affirmative defense in her opposition to Amoco's motion for summary judgment, the facts of this case indicate that Amoco may have failed to mitigate its damages by not finding someone to operate the gas station that Gomez abandoned.

#### 7. Conclusion

To summarize, Amoco has met its burden with regard to Gomez's second (as to duress and undue influence), sixth, and seventh affirmative defenses, and these defenses are stricken. The court finds, however, that Gomez has met her burden as to her first, second (as to the PMPA), third, fifth, and eighth affirmative defenses, all of which preclude the court from entering summary judgment in favor of Amoco on its breach of contract claims. Accordingly,

Amoco's motion for summary judgment on its complaint is denied.

### II. Amoco's Motion for Summary Judgment on Gomez's Counterclaims

Gomez's three-count counterclaim against Amoco alleges fraud in the inducement, breach of fiduciary duty, and breach of contract. Amoco has filed a motion for summary judgment that seeks dismissal of the counterclaim or dismissal of the first two counts and a narrowing of Gomez's breach of contract claim. Amoco has asserted several arguments in support of its motion, which are addressed below.

#### A. Count I: Fraud in the Inducement

 In support of her claim for fraud in the inducement, Gomez has made the following allegations:

> Prior to taking possession of the station, [Amoco] knew that there was a material environment problem at the station or a potential environmental problem at the station; that the problem would, in all likelihood, require extensive construction and demolition; that the demolition would cause the station to close for an extended period of time and that it would require the replacement and/or modification of the underground equipment; and that the new equipment could adversely effect [sic] the operation of the station of the equipment.

Def. C/Claim at ¶ 32. Gomez claims that Amoco misrepresented the conditions of the station in order to induce Gomez to enter into agreements with Amoco to operate the gas station.[13] To avoid any confusion, the court notes that Gomez makes no factual allegations under this count aside from those that relate to the gas station's environmental conditions.[14] The facts she

---

**13.** While Gomez argues that these misrepresentations induced her to enter into all four agreements between the parties, the only relevant agreements for the purposes of this count and, as will be discussed below, count III are the Commission Marketer Lease and Agreement. This is because these agreements, by their terms, cancel and supersede all prior written and unwritten agreements between the parties. *See* Pl.Ex. 1E at ¶ 30; 1F at ¶ 28.

**14.** Even if Gomez had made other allegations under her fraud in the inducement count, such as alleging that Amoco misrepresented

alleges under this count (concealment of the gas station's condition) are separate and distinct from the facts she argues in support of her fifth affirmative defense (misrepresentation of intention to repair), which has been upheld.

The problem with Gomez's first claim is that the parties entered into more than one agreement, and Gomez was aware of the alleged fraud by the time she executed all subsequent contracts. The first contract between the parties was the Trial Franchise Lease, which became effective on May 12, 1997. The evidence shows that, on June 3, 1997, Gomez was placed on notice that Amoco may have concealed the gas station's environmental noncompliance when the DERM inspector told her that Amoco was aware of the conditions affecting the station. From this point on, she no longer could claim fraud in the inducement because her reliance on the alleged misrepresentation as to the gas station's conditions would be unjustified. *See Bailey v. Trenam, Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F.Supp. 825, 829 (S.D.Fla.1996) (stating that fraud requires action in justifiable reliance on defendant's representation).

Despite this notice of environmental problems, Gomez entered into an extended three year lease with Amoco on January 30, 1998. Gomez claims that the station continued to have environmental problems and that the situation was aggravated by the failure of the fuel dispensing equipment. Nevertheless, Gomez entered into a third and fourth contract on September 17, 1998. These are the Commission Marketer Lease and Agreement, which were the final contracts between the parties and which canceled and superseded all prior agreements. *See* Pl.Ex. 1E at ¶ 30; 1F at ¶ 28.

By the time the parties negotiated the second and subsequent agreements, Gomez already knew about the environmental conditions of the gas station. Under Florida law, a defrauded party such as Gomez waives a fraud claim by entering into a subsequent agreement respecting the same subject matter after he or she is put on notice of the fraud. *See Coral Gables Imported Motorcars, Inc. v. Fiat Motors of North Am.*, 673 F.2d 1234, 1240 (11th Cir.1982) (applying Florida law); *Benn v. Key West Propane Gas Corp.*, 72 So.2d 910, 913 (Fla.1954) (holding that plaintiff waived claims based on defendant's misrepresentations by continuing business for seventeen months after learning of fraud).

In support of her argument that she did not waive her fraud claim, Gomez cites to *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So.2d 306 (Fla. 2000), where the court held that the parties' settlement agreements did not bar the plaintiffs' fraudulent inducement claims. In *Mazzoni Farms*, the plaintiffs executed settlement agreements with the defendant after their farms allegedly had been exposed to harmful pesticides. *See id.* at 307. Sometime later, the plaintiffs claimed that they had been defrauded by the defendant's concealment of certain facts prior to entering into these agreements. *See id.* The court reviewed the contracts and held that the plaintiffs could sue for fraudulent inducement because the settlement agreements were not broad enough to encompass such claims. *Id.* at 315. *Mazzoni Farms* does not apply because the court in that case was interpreting contractual releases, which do not exist here. More importantly, the plaintiffs in *Mazzoni Farms* purportedly learned of the fraud after entering into contracts with the defendants. Once they discovered the fraud, no further agreements were executed. By comparison, Gomez entered into two more

---

the fact that it would repair the fuel dispensing equipment, this claim still would be barred. The economic loss rule would invalidate such allegations because the alleged fraud would not be separate or distinct from

the performance due by Amoco under the Commission Marketer Lease and Agreement. *See Hotels of Key Largo, Inc. v. RHI Hotels, Inc.*, 694 So.2d 74, 77 (Fla. 3d DCA 1997).

agreements with Amoco after she claims she was fraudulently induced to enter into her first contract with Amoco. Under such circumstances, as discussed elsewhere in this subsection, courts uniformly hold that a fraud claim is waived.

Florida courts are clear that, in order to find a waiver of the fraud claim, the defrauded party must have actual or imputed knowledge of the facts constituting the alleged fraud at the time the subsequent agreement is made. *See Poole v. Crabtree*, 566 So.2d 597, 598 (Fla. 5th DCA 1990) (holding that plaintiff did not waive fraud claim where she did not know of facts that gave rise to the fraud at the time she entered into novation). In *Coral Gables Imported Motorcars v. Fiat Motors of North America*, 673 F.2d 1234 (11th Cir. 1982), the court disposed of the plaintiff's fraud claim because the plaintiff executed a subsequent franchise agreement with the defendant after the first contract between the parties had expired. Prior to the execution of the second agreement, the plaintiff had learned that the defendants had made several false promises. *See id.* at 1240. The court found that this knowledge, coupled with the execution of a subsequent agreement, effectively waived the plaintiff's fraud claim. *Id.*

In this case, Gomez argues that she did not have actual or constructive knowledge of Amoco's fraud prior to entering into the latest agreements. The record does not support such a statement. Without dispute, Gomez's counterclaim, deposition, and representations to the court reveal that she became aware of the environmental problems less than one month after she began operation of the gas station. *See, e.g.,* Def. C/Cl. at ¶ 13; Gomez Depo. at p. 42–44, 62–64. Because Gomez was on notice that Amoco may have defrauded her prior to her entering into the first lease contract and, knowing this, she still chose to enter into subsequent agreements with Amoco, Gomez has waived her claim for fraudulent inducement as alleged in the first count of her counterclaim. Accord-

ingly, Amoco's motion for summary judgment is granted as to count I of Gomez's counterclaim.

### B. Count II: Breach of Fiduciary Duty

Gomez also seeks to hold Amoco liable for breach of fiduciary duty. According to Gomez, a fiduciary relationship arose between the parties prior to Gomez taking possession of the gas station because Amoco provided training, instruction, and advice on how to operate the Amoco gas station. Gomez claims that Amoco breached that duty when it failed to disclose the environmental problems associated with the gas station.

#### 1. Gomez Did Not Purchase the Gas Station

At the outset, it must be noted that Gomez did not purchase the gas station from Amoco. Rocabaja Corp., which is owned by Gomez and her husband, purchased the gas station from a third party. *See* Pl.Ex. 4, p. 6. This means that Gomez may not even be the proper plaintiff to bring a breach of fiduciary duty claim. Nevertheless, the following discussion assumes that Gomez is a proper plaintiff.

#### 2. Waiver

Amoco's first argument in support of its motion for summary judgment on count II of Gomez's complaint is that Gomez has waived her claim for breach of fiduciary duty. As it does with the claim for fraudulent inducement, Amoco argues that the court must dispose with Gomez's breach of fiduciary duty claim because Gomez entered into a subsequent agreement respecting the same subject matter as to which she was supposedly defrauded. Our research fails to disclose any case that holds that a plaintiff waives a claim of breach of fiduciary duty by entering into subsequent agreements with the defrauding party, but, as discussed above, Florida law provides that a party waives a claim for fraud or misrepresentation by entering

into a novation with the defrauding party. Florida courts hold that breach of fiduciary duty claims are the equivalent of constructive fraud claims when they are based on misrepresentations or concealment. *See Saglio v. Chrysler First Comm. Corp.*, 839 F.Supp. 830 (M.D.Fla.1993); *Beers v. Beers*, 724 So.2d 109, 116–17 (Fla.App. 5th DCA 1999); *Rogers v. Mitzi*, 584 So.2d 1092, 1094 (Fla. 5th DCA 1991). This rule applies in this case, where the facts alleged by Gomez to support her breach of fiduciary duty and fraudulent inducement claims are the same—that Amoco misrepresented the environmental conditions of the gas station. Because Gomez entered into subsequent agreements with Amoco after she became aware of Amoco's misrepresentation, Gomez has waived her breach of fiduciary duty claim against Amoco, just as she has done with her fraud in the inducement claim.

### 3. Contractual Language

 Even if Gomez had not waived her breach of fiduciary duty claim by entering into a novation with Amoco, her claim is meritless because the language of the parties' contract indicates they were dealing at arms' length. The Commission Marketer Agreement states, "This Agreement creates an independent contractor relationship.... This Agreement is not intended to, nor does it create a joint venture, partnership or employer/employee relationship between the parties.... No obligation, agreement or understanding shall be implied from any course of dealing or from any of the terms and provision of the Agreement or the Lease, all obligations and understandings with respect to the subject matter hereof being expressly set forth in this Agreement and the Lease." Pl.Ex. 1F at ¶ 26, 28. In other cases, similar language failed to establish the existence of a partnership or any other kind of fiduciary relationship. *See Eclipse Med., Inc. v. American Hydro–Surgical Instr., Inc.*, 1999 WL 181412 *10, No. 96–8532–CIV (S.D.Fla. Jan. 20, 1999); *Burger King Corp. v. Austin*, 805 F.Supp. 1007,

1020 (S.D.Fla.1992). Accordingly, Gomez's claim for breach of fiduciary duty must be dismissed.

### 4. Facts Do Not Establish Fiduciary Relationship

 The contracts in this case establish a franchiser/franchisee or independent contractor relationship. Such agreements do not automatically give rise to fiduciary obligations. *See Riddle v. Mobil Oil Corp.*, 1992 WL 81321 *13, No. 8601636–CIV (S.D.Fla. Apr. 8, 1992) ("The mere existence of a franchise agreement does not give rise to fiduciary obligations."). This is because parties in such a relationship contract at arms' length. *See Barnes v. Burger King Corp.*, 932 F.Supp. 1420, 1430 (S.D.Fla.1996) (explaining basis for rule). In fact, no court in the Eleventh Circuit or Florida has yet found that the fiduciary duty of disclosure extends to franchiser/franchisee relationships.

 In order for Gomez to establish a fiduciary relationship in this case, she would need to prove facts independent of the parties' contracts. She would need to show that confidence was "reposed as a result of the position of superiority and influence held by [Amoco]." *Becks v. Emery–Richardson, Inc.*, 1990 WL 303548 *28, No. 86–6866–CIV (S.D.Fla.1990) (quoting *Casielles v. Taylor Rolls Royce, Inc.*, 645 F.2d 498, 503 (5th Cir.1981)). A fiduciary relationship exists when there is a relationship of trust and confidence between parties, where confidence is given by one and trust is accepted by the other. *See id.* It is not enough for Gomez to prove that she placed her trust and confidence in Amoco or his agent, Jose Contreras. She also must introduce "substantial evidence" that Amoco recognized, accepted, or undertook the duties of a fiduciary—that of advising, counseling, and protecting Gomez. *Swerhun v. General Motors Corp.*, 812 F.Supp. 1218, 1223 (M.D.Fla.1993) (holding that defendant's statements and overtures to

plaintiff created genuine issue of material fact as to whether a fiduciary relationship emerged); *see also Lanz v. Resolution Trust Corp.,* 764 F.Supp. 176, 179 (S.D.Fla.1991) (holding that advice defendant gave to plaintiff did not give rise to fiduciary relationship).

Taking all of the evidence in the light most favorable to Gomez, no fiduciary relationship existed between Gomez and Amoco. It may be true that Contreras influenced Gomez, that Gomez was looking to Contreras to protect her interest, and that Gomez trusted Contreras "to the point where she bought a contaminated 'lemon' gas station that was not even on the market," *see* def.'s Response to Pl.'s Mtn. for S.J., but it does not automatically follow that Contreras "recognized, accepted, or undertook" the duties of "advising, counseling, and protecting" Gomez. The record only establishes that Contreras told Gomez that the station in which she first expressed an interest would undergo extensive construction and then introduced her to the owner of the gas station she eventually purchased. *See* Contreras Depo. at p. 217. There is no material or conflicting evidence that Contreras treated Gomez any differently than he would any other potential Amoco franchisee. Without more, these facts are insufficient to create a fiduciary relationship. *See Burger King Corp. v. Austin,* 805 F.Supp. 1007, 1019 (S.D.Fla.1992) (relying on recommendation, advice, and superior knowledge of defendant that eventually defrauds plaintiff did not create fiduciary relationship).

In an arms' length transaction such as this one, "there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own due diligence have discovered." *Lanz,* 764 F.Supp. at 179. Because due diligence by

Gomez would have revealed this information, Amoco's nondisclosure of the environmental contamination is not actionable.[15] There is no evidence that Amoco prevented or dissuaded Gomez from investigating the public records or affirmatively misled her as to the presence or absence of any public environmental reports. As such, there is no evidence of a duty or a breach of fiduciary duty owed to Gomez by Amoco. Accordingly, Amoco's motion for summary judgment on count II of Gomez's complaint is granted.

### C. Count III: Breach of Contract

#### 1. Novation

Gomez's breach of contract claim seeks to hold Amoco liable under all of the agreements entered into by the parties—the original Trial Franchise Lease dated April 24, 1997, the lease dated January 30, 1998, and the Commission Marketer Lease and Agreement dated September 17, 1998. Amoco correctly points out that only the latter two (the Commission Marketer contracts) are at issue in this case because a novation has occurred. Each of the Commissioner Market contracts states that it "cancels and supersedes and prior written and unwritten agreements and understandings between the parties...." *See* Pl.Ex. 1E at ¶ 30; IF at ¶ 28.

According to Gomez, Amoco is precluded from arguing that a novation has occurred because it has not raised this as an affirmative defense. *See Walter E. Heller & Co. v. O/S Sonny V,* 595 F.2d 968, 976 (5th Cir.1979) (barring party from arguing merits of affirmative defense that was not raised in the pleadings). In practice, Amoco has not waived this defense because "an affirmative defense is not waived to the

---

**15.** During oral argument, Gomez argued that Amoco's noncompliance with discovery requests for the DERM records establishes that due diligence on her part would not have produced these records. This argument fails to show that Gomez could not have obtained this information from a government record office prior to entering into her contracts with Amoco. As she admitted in her deposition, "I understand they are just like typical building department records, which is public information." Gomez Depo. at pp. 151, 270.

extent that the party who should have pled the defense introduces evidence in support thereof without objection by the adverse party or that the opposing party's own evidence discloses the defense. . . . Neglect to affirmatively plead the defense is simply noncompliance with a technicality and does not constitute a waiver where there is no claim of surprise. (citations omitted)." *Jones v. Miles,* 656 F.2d 103, 108 n. 7 (5th Cir. Aug.31, 1981); *see also Hassan v. United States Postal Serv.,* 842 F.2d 260, 263 (11th Cir.1988) (quoting *Jones* ). As such, the Commission Marketer Lease and Agreement have superseded any prior agreements entered into by the parties, and Gomez's breach of contract claim is limited in scope to these contracts.

### 2. Limitation of Remedies

Florida courts allow parties to limit remedies contractually, and if such provisions are made, a court may not award greater compensatory damages. *See Lafayette Stabilizer Repair, Inc. v. Machinery Wholesalers Corp.* 750 F.2d 1290, 1294 (5th Cir.1985) (applying Florida law); *Action Orthopedics, Inc. v. Techmedica, Inc.,* 759 F.Supp. 1566, 1569 (M.D.Fla.1991). The agreements at issue in this case provide, "In no event shall either party be liable to the other for any consequential, incidental, punitive or exemplary losses or damages suffered by the other party." Pl.Ex. 1E at ¶ 14; IF at ¶ 18. As a result, Gomez's breach of contract damages is limited to compensatory damages, and any requests by Gomez on consequential, incidental, punitive, or exemplary losses is denied. *See Hi Neighbor Enter., Inc. v. Burroughs Corp.,* 492 F.Supp. 823, 827 (N.D.Fla.1980) (awarding only compensatory damages where contractual limitation excluded "loss of profits, indirect, incidental, special, consequential, or other similar damages" arising out of breach of contract). The same limitation applies to Amoco's breach of contract claims against Gomez. In light of the limitation clause, Amoco's request to limit the damages that are awardable to Gomez to compensatory damages is granted.

It is hereby:

**ORDERED AND ADJUDGED THAT:**

1. Amoco's motion for summary judgment on its breach of contract claims (DE # 102) is DENIED. Gomez's first, second (as to the PMPA), third, fifth, and eight affirmative defenses remain for trial. Her fourth, sixth, and seventh affirmative defenses are stricken.

2. Amoco's motion for summary judgment on Gomez's counterclaim (DE # 103) is GRANTED as to counts I and II, and GRANTED so far as it limits the scope and damages of count III.

3. Amoco's breach of contract claims and Gomez's breach of contract counterclaim remain for trial.